UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

ALL YEAR COOLING AND HEATING, INC.          Chapter 11

      Debtor.                                                         Case No. 13-11811-RBR
_____/

**ALL YEAR COOLING AND HEATING, INC. AND**
**ALL YEAR ELECTRIC, INC.'S**
**FIRST AMENDED PLAN OF REORGANIZATION**

November 12, 2013

Respectfully submitted,

Bradley S. Shraiberg, Esquire
Lenore M. Rosetto, Esquire
SHRAIBERG, FERRARA & LANDAU, P.A.
2385 NW Executive Center Drive, Ste. 300
Boca Raton, FL 33431
Telephone: (561) 443-0800
Facsimile:  (561) 998-0047
Email: bshraiberg@sfl-pa.com
Email:  lrosetto@sfl-pa.com

**ATTORNEYS FOR DEBTORS**

**ALL YEAR COOLING AND HEATING, INC. AND ALL YEAR ELECTRIC, INC'S
FIRST AMENDED PLAN OF REORGANIZATION
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

All Year Cooling and Heating, Inc. ("**AYC**") and All Year Electric, Inc. ("**AYE**," together with AYC, the "**Debtors**") propose the following plan of reorganization under section 1121(b) of the Code. **As indicated in more detail in the Disclosure Statement, AYC has filed a motion to substantively consolidate its case with AYE's case. The substantive consolidation of AYC and AYE has not yet been approved. In the event the Court denies the Substantive Consolidation Motion [ECF No. 163], AYC will amend the Plan and Disclosure Statement to remove AYE from the provisions herein.**

**ARTICLE I**

**DEFINITIONS**

As used in this Plan, the following terms shall have the respective meanings set forth below, and such meanings shall be equally applicable to the singular and plural forms of the terms defined unless the context requires otherwise.

*"1858 Vehicle"* shall mean the 2008 Ford E 150 VIN # 1FTNE14W08DA01858.

*"6746 Vehicle"* shall mean the 2008 Ford E 150 VIN # 1FTNE14W38DA06746.

*"6269 Vehicle"* shall mean the 2008 Ford E 150 VIN # 1FTNE14W38DA56269.

*"6051 Vehicle"* shall mean the 2008 E 150 VIN # 1FTNE14W98DA56051.

*"3992 Vehicle"* shall mean the 2008 Ford E 150 VIN # 1FTNE14WX8DA33992.

*"5919 Vehicle"* shall mean the 2008 Ford E150 VIN # 1FTNE14W08DA55919.

*"6017 Vehicle"* shall mean the 2008 Ford E 150 VIN # 1FTNE14W98DA56017.

*"3712 Vehicle"* shall mean the VIN # NM0LS7AN5AT003712.

*"7646 Vehicle"* shall mean the VIN # 1FDWE35P97DA37646

*"4810 Vehicle"* shall mean the 2008 Ford E 150 VIN # 1FTNE14W78DB44810.

*"2366 Vehicle"* shall mean the 2008 Ford E 150 VIN # 1FTNE14W88DA42366.

*"3814 Vehicle"* shall mean the 2008 Ford E 150 VIN # 1FTNE14W88DA33814.

*"3982 Vehicle"* shall mean the 2008 Ford E 150 VIN # 1FTNE14W28DB13982.

**"3735 Vehicle"** shall mean the 2008 E 150 VIN # 1FTNE14W78DA43735.

**"4734 Vehicle"** shall mean the 2008 Ford E 150 VIN # 1FTNE14W48DA34734.

**"2075 Vehicle"** shall mean the 2008 Ford E 150 VIN # 1FTNE14W38DA52075.

**"1741 Vehicle"** shall mean the VIN 1FAHP3EN6AW191741.

**"5297 Vehicle"** shall mean the 2008 Ford E350 VIN # 1FTDWE35P98DA35297.

**"6291 Vehicle"** shall mean the 2010 Ford Transit VIN # NM0LS7CN4AT006291.

**"6299 Vehicle"** shall mean the 2010 Ford Transit VIN # NMoLS6AN2AT006299.

**"3443 Vehicle"** shall mean the 2008 Ford Focus VIN # 1FAHP35N48W243443.

**"3573 Vehicle"** shall mean the 2008 Ford E 150 VIN # 1FTNE14W78DA43573.

**"3799 Vehicle"** shall mean the 2008 Ford E150 VIN # 1FTNE14W08DA43799.

**"3796 Vehicle"** shall mean the 2009 Ford Ranger, VIN # 1FTYR10D39PA53796.

**"1340 Vehicle"** shall mean the 2010 Lincoln Navigator VIN # 5LMJJ3H51AEJ01340.

**"8O27 Vehicle"** shall mean the 2008 Ford F150 VIN # 1FTRF12238KD88O27.

**"7314 Vehicle"** shall mean the 2008 Ford Taurus VIN # 1FAHP25W58G157314.

**"5458 Vehicle"** shall mean the 2010 Ford Taurus VIN # 1FAHP2EW4AG125458.

**"3081 Vehicle"** shall mean the 2008 Ford Focus VIN # 1FAHP32N18W173081.

**"6803 Vehicle"** shall mean the 2009 Ford Fusion VIN # 3FAHP06Z69R176803.

**"1406 Vehicle"** shall mean the 2009 Ford Ranger, VIN # 1FTYR10D19PA01406.

**"Action(s)"** shall mean all actions that a trustee or debtor-in-possession is empowered to bring pursuant to the Code, including, without limitation, any cause of action, lawsuit, adversary proceeding, contested matter, claim objection, Avoidance Action, or right of the Debtors or the Estates against any Person.

**"Administrative Claim"** shall mean a claim for payment of an administrative expense under section 503 of the Code that is entitled to priority under section 507(a)(1) of the Code and any fees or charges assessed against the Estates pursuant to 28 U.S.C. § 1930.

"**Administrative Claim Bar Date**" shall mean the date set by the Court for all creditors and parties in interest to file and serve Administrative Claims.

"**Administrative Claimant**" shall mean the holder of an Administrative Claim.

"**Allowed Amount**" shall mean with respect to a Claim, (a) the amount of a Claim that was listed in the Debtors' Schedules (as originally filed in these Cases) as not disputed, contingent or unliquidated, if the holder of such Claim has not filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules, or (b) if a holder of a Claim has filed a Proof of Claim with the Court within the applicable period of limitation fixed by the Court pursuant to 3003(c)(3) of the Rules:  (i) the amount stated in such proof of claim or in the Schedules if no objection to such proof of claim or amount listed in the Schedules has been interposed within the applicable period of limitation fixed by the Code or Rules, or as otherwise fixed by the Court, or (ii) such amount as shall be fixed by an order of the Court which has become a Final Order, if an objection has been interposed within the applicable period of limitation fixed by the Code, the Rules, or the Court, or (c) with respect to a Fee Request, such amount as shall be fixed by an order of the Court which has become a Final Order.  In no event shall the Allowed Amount of any Priority Claim or Unsecured Claim include interest accrued on such Claim after AYC's Filing Date for Claims in AYC's Case and/or after AYE's Filing Date for Claims in AYE's Case.

"**Allowed Claim**" shall mean any Claim which is not a Disputed Claim for which an Allowed Amount has been finally determined in such Allowed Amount.

"**Allowed General Unsecured Claim**" shall mean an Allowed Claim, not entitled to priority, which arose or which is deemed to have arisen prior to the respective Petition Date's commencing these Cases and as to which the Claimant has not asserted, or as to whom it is determined by Final Order does not hold a valid, perfected and enforceable lien, security interest or other interest in or encumbrance against property of the Debtors or a right of setoff to secure the payment of such Claim, but excluding unsecured Claims previously paid in these Cases pursuant to an agreement approved by the Bankruptcy Court.

"**Allowed Priority Tax Claim**" shall mean an Allowed Claim (other than an Administrative Claim or Priority Claim) that is entitled to priority under section 507(a)(8) of the Code.

"**Allowed Unsecured Priority Claim**" shall mean an Allowed Claim that is entitled to priority (other than a Priority Tax Claim) under section 507 of the Code.

"**Allowed Secured Claim**" shall mean an Allowed Claim for which a Claimant asserts, or upon objection is determined by a Final Order to hold, a valid, perfected and enforceable lien, security interest or other interest or encumbrance in property, including post-petition interest and attorney fees to the extent allowable and applicable, in which the Debtors have an interest not subject to avoidance or subordination under the Bankruptcy Code or applicable non-bankruptcy law, or an Allowed Claim for which a Claimant asserts a setoff under section 553 of the Bankruptcy Code, but in any event only to the extent of the value, determined in accordance with

section 506(a) of the Bankruptcy Code, of the Claimant's interest in the Debtor's interest in the property or to the extent of the amount subject to such setoff as the case may be.

*"Article"* shall mean one of the numbered Articles of the Plan.

*"Assets"* shall mean all of the right, title, and interest of the Debtors in and to Property of the Estates, whether tangible or intangible.

*"Avoidance Action(s)"* shall mean the Actions pursuant to Chapter 5 of the Code, including, without limitation, rights to recover property or money pursuant to sections 542-553 of the Code.

*"AYC"* shall mean All Year Cooling and Heating, Inc.

*"AYE"* shall mean All Year Electric, Inc. AYC anticipates AYE will be consolidated with AYC pursuant to the *Debtors' Expedited Motion to Approve Substantive Consolidation* [ECF No. 163]. The hearing to consider approval of the substantive consolidation is currently scheduled for October 29, 2013. *See* ECF No. 164.

*"AYC's Filing Date"* and/or *"AYC's Petition Date"* shall mean January 28, 2013, the date on which AYC commenced its Case by filing a voluntary petition under Chapter 11 of the Code.

*"AYE's Filing Date"* and/or *"AYE's Petition Date"* shall mean September 30, 2013, the date on which AYE commenced its Case by filing a voluntary petition under Chapter 7 of the Code.

*"Ballot"* shall mean the ballot accompanying the Disclosure Statement upon which holders of Claims in each Impaired Class of Claims that are entitled to vote on the Plan shall indicate their acceptance or rejection of the Plan and, if applicable, such other elections as may be made thereon are to be indicated.

*"Ballot Deadline"* shall mean the last day established by order of the Court for filing a Ballot with the Clerk of the Court.

*"Business Day"* shall mean a day other than a Saturday, a Sunday, or a day on which commercial banks in Florida are authorized or required to close.

*"Cases"* shall mean these Chapter 11 Case Nos. 13-11811-RBR and 13-33378-RBR, pending before the United States Bankruptcy Court for the Southern District of Florida, Fort Lauderdale Division.

*"Cash"* shall mean legal tender of the United States of America.

*"Claim"* shall mean (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed or contingent, matured, unmatured, disputed,

undisputed, legal, equitable, secured, or unsecured; (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; (c) without limiting the generality of the foregoing, all Administrative Claims, Priority Claims, Secured Claims, and Unsecured Claims.

"***Claims Bar Date***" shall mean the last date for creditors to file Proofs of Claims in these Cases as established, or shortened, by the Bankruptcy Court. As of the date of this filing, the Bankruptcy Court set June 6, 2013 as the deadline for creditors to file Proofs of Claims in AYC's Case. On October 8, 2013, AYE filed a *Motion to Shorten the Claims Bar Date for All Creditors Except a Governmental Unit* [ECF No. 16 in AYE's Case], which was granted in part. The deadline for any creditor of AYE (other than a governmental unit) or equity security holder of AYE whose claims or interest is not scheduled or is scheduled as disputed, contingent, or unliquidated, shall file a proof of claim or interest in AYE's bankruptcy case on or before December 16, 2013.

"***Class***" shall mean a group of Claims classified together pursuant to Article IV of the Plan.

"***Code***" shall mean the Bankruptcy Code, 11 U.S.C. §§ 101 et. seq.

"***Confirmation***" shall mean the entry by the Court of the Confirmation Order.

"***Confirmation Date***" shall mean the date on which the Clerk of the Court enters the Confirmation Order on the Docket.

"***Confirmation Order***" shall mean the order entered by the Court confirming the Plan, which shall contain such provisions as the Proponents desire and shall otherwise be in a form and substance satisfactory to the Proponents.

"***Court***" shall mean the United States Bankruptcy Court for the Southern District of Florida, including any Bankruptcy Judge thereof, and any court having competent jurisdiction to hear appeals from the Bankruptcy Judges thereof.

"***Creditor***" shall mean any Person holding a Claim, including Administrative Claimants and Claims of the kind specified in sections 502(b), 502(h), and 502(i) of the Code, and such Person's heirs, successors, assigns, executors, and personal representatives.

"***Debtor(s) or Debtor(s)-in-Possession***" shall mean All Year Cooling and Heating, Inc. and All Year Electric, Inc. Any reference to "***Debtors***" shall also include the Debtors in their capacity as debtors-in-possession in these Cases, and vice-versa.

"***Disputed Claim***" shall mean any Claim for which an Allowed Amount has not yet been determined, and with respect to which an objection has been interposed on or prior to the Confirmation Date or such other date as may be fixed by the Court and which objection has not

been withdrawn or determined by a Final Order, or which is listed on the Schedules as disputed, contingent or unliquidated.

*"Disputed Claim Amount"* shall mean the Amount of any Disputed Claim.

*"Disputed Claims Reserve"* shall have the meaning set forth in Section 5.03 of the Plan.

*"Distribution"* shall mean funds to be paid to holders of Claims pursuant to Article II, Article IV and Article V of the Plan.

*"Distribution Date"* shall mean the dates upon which Distributions may be made pursuant to Article V of the Plan.

*"Docket(s)"* shall mean the docket(s) maintained in these Cases by the Clerk of the Court.

*"Effective Date"* shall mean the fifteenth (15th) day after the entry of the Confirmation Order.  In the event of an appeal, absent the entry of a stay, the Effective Date shall be the fifteenth (15th) day after the entry of the Confirmation Order.  In the event the Confirmation Order is stayed pending appeal, the Effective Date shall be the fifteenth (15th) day after the entry of an Order either lifting the stay or affirming the Confirmation Order.

*"Equity Interest(s)" or "Interest(s)"* shall mean any ownership or equity interest in the Debtors, including without limitation, interests evidenced by common or preferred stock.

*"Estates"* shall mean the Estates created in these Cases pursuant to section 541 of the Code.

*"Executory Contract"* shall mean a contract or unexpired lease to which either of the Debtors is a party and that is executory within the meaning of section 365 of the Code.

*"Ford"* shall mean Ford Motor Credit Company, LLC.

*"Final Order"* shall mean an order or judgment of the Court as entered on the Docket that has not been reversed, stayed, modified, or amended, and respecting which the time to appeal, petition for certiorari or seek reargument, review or rehearing has expired, and as to which no appeal, reargument, petition for certiorari, review or rehearing is pending, or as to which any right to appeal, reargue, petition for certiorari or seek review or rehearing has been waived in writing in a manner satisfactory to the Proponents, or, if any appeal, reargument, petition for certiorari, review or rehearing thereof has been denied, the time to take further appeal or to seek certiorari or further rehearing, review or reargument has expired.  If any provision of the Plan requires the entry of a Final Order as a condition to the occurrence or performance of an act, the Proponents may waive such requirement in accordance with the Plan.

*"Gemaire"* shall mean Gemaire Distributors, LLC.

"*General Undersecured Claim(s)*" shall mean the amount of a prepetition Secured Claim that exceeds the value of the collateral securing that Claim and is therefore unsecured and includes the following General Undersecured Claims against AYC:

- Any Allowed Claim of Air Systems a/k/a American Standard, listed as disputed in the amount of $2,398.17 on AYC's Schedule D;
- Allowed General Undersecured Claims of Dell, which AYC estimated totaled $22,611.18 on AYC's Schedule D;
- Allowed General Undersecured Claims of Ford in the aggregate amount of $46,555.81, which is comprised of the following: $265.79 as it relates to the 1858 Vehicle; $258.80 as it relates to the 6746 Vehicle; $3,100.54 as it relates to the 3992 Vehicle; $3,100.54 as it relates to the 3735 Vehicle; $3,507.60 as it relates to the 4734 Vehicle; $2,464.25 as it relates to the 2075 Vehicle; $7,783.86 as it relates to the 5297 Vehicle; $2,940.27 as it relates to the 6291 Vehicle; $3,507.60 as it relates to the 3573 Vehicle; $5,016.93 as it relates to the 3799 Vehicle; $708.24 as it relates to the 3796 Vehicle; $1,109.75 as it relates to the 8O27 Vehicle; $7,253.28 as it relates to the 7314 Vehicle; $3,983.93 as it relates to the 5458 Vehicle; and $1,554.43 as it relates to the 6803 Vehicle;
- Allowed General Undersecured Claim of Gemaire in the amount of $1,371,057.60;
- Allowed General Undersecured Claim of Merchant Cash in the amount of $224,006.20; and
- Any Allowed Claim of Pro Enterprises USA, Inc., as Pro Enterprises USA, Inc. filed a secured claim in the amount of $12,500 (POC No. 7) and AYC listed the claim of Pro Enterprises USA, Inc. as disputed on its Schedule F.

"*General Unsecured Claim*" shall mean any Claim against the estates of the Debtors other than an Administrative Claim, a Secured Claim, or an Allowed Unsecured Priority Claim.

"*Impaired*" shall mean an Allowed Claim that is Impaired within the meaning of section 1124 of the Code.

"*Late Filed Claim(s)*" shall mean a Claim filed in AYC's Case after the Claims Bar Date established in AYC's Case and/or a Claim filed in AYE's Case after the Claims Bar Date established in AYE's Case.

"*Lien(s)*" shall mean a charge against or interest in any item of Property of the Estates to secure payment of a debt or performance of an obligation.

"*Merchant Cash*" shall mean Merchant Cash and Capital, LLC.

"*Paradise Vehicles*" shall mean the following vehicles that are encumbered by security interests in favor of Paradise Bank and against AYC:  (i) 2008 Chevy Cobalt, VIN # 1GAL58X87176888; (ii) 2006 Ford Van, VIN # 1FTNE24L56DA51583; (iii) 2008 Ford Van, VIN # 1FTNE14W88DA09979; (iv) 2005 Chevy Van, VIN # 1GCGG29V751232763; and (v) 2007 Ford Van, VIN # 1FTNE24W97DA54689.

*"Person(s)"* shall mean any individual, sole proprietorship, partnership (general or limited), joint venture, trust, unincorporated organization, association, corporation, institution, entity, or government (whether federal, state, county, city, municipal or otherwise, including, without limitation, any instrumentality, division, agency, body, political subdivision or department thereof).

*"Plan"* shall mean this Plan of Reorganization in the present form or as it may be modified, amended, or supplemented from time to time.

*"Plan Documents"* shall mean the documents to be filed as a part of the Plan Supplement.

"*PNC Bank*" shall mean PNC Bank, National Association.

*"Post-Petition Interest"* shall mean all interest accrued but unpaid after AYC's Petition Date in AYC's Case and/or after AYE's Petition Date in AYE's Case on any Allowed Claim, which shall be calculated based upon the rate set forth in any contract (including any default rate, if applicable and authorized under the Code) evidencing the Claim and, if no such rate is set forth therein, then the legal rate of interest, which for purposes of this Plan shall mean the federal judgment rate of interest in effect on the Effective Date.

*"Pre-Petition"* shall mean prior to AYC's Petition Date as it relates to AYC's Case and/or prior to AYE's Petition Date as it relates to AYE's Case.

*"Priority Claim"* shall mean a Claim that is entitled to priority (other than a Priority Tax Claim) under section 507 of the Code.

*"Priority Tax Claim"* shall mean a Claim (other than an Administrative Claim or Priority Claim) that is entitled to priority under section 507(a)(8) of the Code.

*"Pro Rata"* shall mean proportionately, so that the ratio of the amount of consideration distributed to an account of a particular Allowed Claim to the Allowed Amount of such Claim is the same as the ratio of the amount of consideration distributed on account of all Allowed Claims of the Class in which the particular Claim is included to the amount of all Allowed Claims of that Class, unless otherwise defined in the Plan.  Whenever a Disputed Claim has not been finally resolved, an appropriate reserve for payment of such Disputed Claim shall be established so that there will be sufficient consideration available to make a Pro Rata distribution to the holder of such Disputed Claim upon final resolution of the dispute.

*"Professional"* shall mean any professional employed in these Cases pursuant to sections 327, 328 or 1103 of the Code or otherwise pursuant to an order of the Court.

*"Property of the Estates"* shall mean the property defined in section 541 of the Code.

***"Proponents"*** shall mean the Debtors, the proponents of the Plan.

***"Rejected Contract"*** shall mean an Executory Contract that is rejected at any time during these Cases or pursuant to Article VI of the Plan.

***"Rejection Claim"*** shall mean a Claim arising under section 502(g) of the Code in its Allowed Amount.

"***Reorganized Debtors***" shall mean All Year Cooling and Heating, Inc. and All Year Electric, Inc., as reorganized, on or after the Effective Date.

***"Rules"*** shall mean the Federal Rules of Bankruptcy Procedure.

***"Schedules"*** or "***Amended Schedules***" shall mean the Schedules and any Amended Schedules of Assets and liabilities filed or which may be filed by the Debtors with the Court in these Cases.

***"Section"*** shall mean a numbered subsection of any Article of the Plan.

***"Secured Claim"*** shall mean a Claim secured by a Lien on property in which the Estates have an interest or that is subject to set-off under section 553 of the Code to the extent of the value of the interest attributable to such Claim in the Estates' interest in such property or to the extent of the amount subject to set-off.

***"Secured Creditor"*** shall mean the holder of a Secured Claim.

***"Substantial Consummation"*** shall mean that the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Code.

***"Thomas Smith Jr."*** shall mean the President of the Debtors who is married to Erin Alisa Smith and filed for chapter 11 relief on January 29, 2013 (Case No. 13-1200-RBR).

***"Thomas Smith Sr."*** shall mean the father of Thomas Smith Jr.

***"Trane"*** shall mean Trane U.S. Inc., a Delaware corporation authorized to transact business in Florida f/k/a Trane, a division of American Standard, Inc.

***"Unimpaired"*** shall mean an Allowed Claim that is <u>not</u> Impaired within the meaning of section 1124 of the Code.

***"U.S. Trustee's Fees"*** shall consist of those fees due to the United States Trustee as required pursuant to 28 U.S.C. §1930(a)(6).

***"Rules of Construction and Interpretation"***

The following rules of construction shall be applicable for all purposes of the Plan unless the context clearly requires otherwise:

(a) The terms "include", "including", and similar terms shall be construed as if followed by the phrase "without being limited to".

(b) Words of masculine, feminine, or neutral gender shall mean and include the correlative words of the other genders, and words importing the singular number shall mean and include the plural number, and vice-versa.

(c) All article, section, and exhibit or appendix captions are used for convenience and reference only, and in way define, limit, or describe the scope or intent of, or in any way affect, any such article, section, exhibit, or appendix.

## ARTICLE II

### TREATMENT OF UNCLASSIFIED CLAIMS: ADMINISTRATIVE CLAIMS, PRIORITY CLAIMS AND UNITED STATES TRUSTEE'S FEES

The following Allowed Administrative Claims, Allowed Priority Claims and United States Trustee's Fees are Unimpaired under the Plan and will be treated as follows:

**2.01**  **Allowed Administrative Claims**

**a.**  **Ordinary Course Claims.**

Allowed Administrative Claims representing liabilities incurred in the ordinary course of business by the Debtors shall be paid in full and performed by the Reorganized Debtors in the ordinary course of business consistent with past practices and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

**b.**  **Professional Fees and Expense Claims.**

Compensation of professionals and reimbursement of expenses incurred by professionals are Administrative Claims pursuant to sections 503(b)(2), 503(b)(3), 503(b)(4) and 503(b)(5) of the Code (the "**Professional Fees and Expenses Claims**").  All payments to Professionals for Professional Fees and Expenses Claims will be made in accordance with the procedures established by the Code, the Rules and the Court relating to the payment of interim and final compensation for services rendered and reimbursement of expenses.  The Court will review and determine all applications for compensation for services rendered and reimbursement of expenses.

All entities seeking an award by the Court of Professional Fees and Expenses shall file their respective final applications for allowance of compensation for services rendered and

reimbursement of expenses incurred through the Effective Date pursuant to section 330 of the Code and Rule 2016 by the date that is fifteen (15) days after the Effective Date or such other date as may be fixed by the Court.

The time for filing objections to applications for allowance and payment of Professional Fees and Expenses, and the date and time for a hearing in respect of such applications and the related objections, if any, shall be set forth in the Confirmation Order or other order of the Court.

Notwithstanding anything herein to the contrary, all Professional Fees and Expenses that are awarded by the Court shall become Allowed Administrative Claims and shall be paid in full on the later of the Effective Date of the Plan, the date on which such Professional Fees and Expense Claim becomes an Allowed Administrative Claim by Final Order of the Court, as soon thereafter as is reasonably practicable, or upon agreement reached between the Debtors and each respective professional.

### 2.02    Allowed Priority Tax Claims of Internal Revenue Service

Prior to AYC's Petition Date, AYC estimates that the sum of $1,110,871.92 was due to the Internal Revenue Service for its payroll tax obligations.  The Internal Revenue filed a proof of claim in the amount of $1,909,785.23 in AYC's Case, of which $1,581,963.95 was claimed as priority and $327,821.28 was claimed as a general unsecured claim for unpaid tax obligations of AYC.  *See* Proof of Claim No. 30.  AYC is in the process of evaluating the proof of claim filed by the Internal Revenue Service to determine whether to object to said proof of claim as AYC believes the Allowed Priority Tax Claim of the Internal Revenue Service is $1,429,680.97.  AYE estimates the Internal Revenue Service has no Claims against AYE.

Except to the extent that the holder of the Allowed Priority Tax Claims of Internal Revenue Service has been paid prior to the Effective Date or agrees to a different treatment, commencing within thirty (30) days of the Effective Date, AYC shall make principal and interest monthly payments to the holder of the Allowed Priority Tax Claims of Internal Revenue Service for Allowed Priority Tax Claims in and or against AYC and AYE for a period of four (4) years from the Effective Date or for a period of five (5) years following the Order for Relief, whichever occurs first, amortized over fifteen (15) years, with interest at the rate of 5%, or as otherwise determined by the Court.  The entire outstanding principal balance, together with accrued, but unpaid interest, shall be due and payable in full on the fourth (4th) anniversary of the Effective Date of the Plan or on the fifth (5th) anniversary following the Order for Relief, whichever occurs first, equal to the amount of its Allowed Priority Claim, except to the extent that a holder of the Allowed Priority Tax Claim of Internal Revenue Service.   In the event PNC Bank's Allowed Secured Claim is paid in full prior to the completion of the payments to be made to the Internal Revenue Service, AYC shall make an annual payment in the amount equal to eighty percent (80%) of its net annual income (as calculated on December 31st) to the Internal Revenue Service until its Allowed Claim is paid in full.  Prior to and after the Effective Date, AYC shall have the right, in its sole discretion, to prepay at any time, in whole or in part, the Allowed Priority Tax Claim of Internal Revenue Service without premium or penalty of any sort or nature.

**2.03    Allowed Priority Tax Claims of Florida Department of Revenue**

Prior to AYC's Petition Date, AYC estimated that the sum of $54,119.61 was due to the Florida Department of Revenue.  The Florida Department of Revenue filed Proof of Claim No. 85 in AYC's Case indicating the amount of $26,075.27 as Priority and Proof of Claim No. 86 in AYC's Case indicating the amount of $2,689.67 as Priority.  AYE estimates the Florida Department of Revenue has no Claims against AYE.  Commencing within thirty (30) days of the Effective Date, AYC shall make principal and interest monthly payments to the holder of the Allowed Priority Tax Claim of Florida Department of Revenue for Allowed Priority Tax Claims in and or against AYC and AYE for a period of four (4) years from the Effective Date or for a period of five (5) years following the Order for Relief, whichever occurs first, fully amortized over the payment period, with interest at the rate of 5%, or as otherwise determined by the Court, of a value, as of the Effective Date of the Plan, equal to the amount of its Allowed Priority Claim, except to the extent that a holder of the Allowed Priority Tax Claim of Internal Revenue Service under section 507(a)(8) of the Code has been paid prior to the Effective Date or agrees to a different treatment.  Prior to and after the Effective Date, AYC shall have the right, in its sole discretion, to prepay at any time, in whole or in part, the Allowed Priority Tax Claim of Internal Revenue Service without premium or penalty of any sort or nature.

**2.04    United States Trustee's Fees.**

AYC shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) for AYC and AYE's Cases through Confirmation on the Effective Date. AYC shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) each quarter until the earlier of the closing of these Cases by the issuance of a Final Decree by the Court, or upon entry of an order of this Court dismissing these Cases, or converting these Cases to another chapter under the Code, and the Reorganized Debtors shall file post-confirmation quarterly operating reports indicating all cash disbursements for the applicable period until the Court enters a final decree, dismisses the case, or converts the case to another chapter.  .

**ARTICLE III**

**CLASSIFICATION OF CLAIMS**

For purposes of this Plan, the Classes of Claims against or in the Debtors shall be as follows:

| **Class** | **Description** | **Status** | **Voting Status** |
| --- | --- | --- | --- |
| Class 1 | Allowed Secured Tax Claims | Impaired. | Yes. |
| Class 2 | Allowed Secured Claim of PNC Bank | Impaired | Yes. |
| Class 3 | Allowed Secured Claim of Trane US Inc. f/k/a Trane | Impaired. | Yes. |

| Class 4 | Allowed Secured Claim of Ford | Impaired. | Yes. |
|---------|-------------------------------|-----------|------|
| Class 5 | Allowed Secured Claims of Paradise Bank with respect to the Paradise Vehicles | Unimpaired. | No. |
| Class 6 | Allowed Secured Claim of Gemaire Distributors | Impaired. | Yes. |
| Class 7 | Allowed Secured Claim of Merchant Cash | Impaired. | Yes. |
| Class 8 | Allowed General Unsecured Claims & Allowed General Undersecured Claims | Impaired. | Yes. |
| Class 9 | Allowed Equity Interests | Impaired. | No. Deemed Rejected. |

## ARTICLE IV

## TREATMENT OF CLASSIFIED CLAIMS

### 4.01    Class 1 – Allowed Secured Tax Claims

#### Class 1A - Allowed Secured Tangible Personal Property Tax Claim(s)

(a)    Description.    Class 1A consists of the Allowed Secured Tangible Personal Property Tax Claims against AYC's personal property in the aggregate amount of $3,478.75. *See* Proof of Claim No. 8 filed in AYC's Case.

(b)    Treatment.  Except to the extent that the holder of the Allowed Secured Tangible Personal Property Tax Claims has been paid by AYC or some other party prior to the Effective Date or agrees to a different treatment, AYC shall pay the Class 1A Claimholder 100% of the Allowed Amount of the Claim.   The Class 1A Claimholder shall receive equal monthly payments, with interest at the statutory rate, over a period not to exceed four (4) years from the Effective Date or five (5) years following the Order for Relief, whichever occurs first, commencing within thirty (30) days of the Effective Date of the Plan.   There shall be no prepayment penalty.

(c)    Impairment.  The Class 1A Claims is Impaired and the Class 1A Claimholder is entitled to vote to accept or reject the Plan.

#### Class 1B - Allowed Secured Claims of the Florida Department of Revenue

(a)    Description.  Class 1B consists of the Allowed Secured Claims of the Florida Department of Revenue in or against AYC.  The Florida Department of Revenue filed Proof of Claim No. 85 in AYC's Case indicating the amount of $30,015.85 as Secured.

(b)    Treatment.  Except to the extent that the holder of the Allowed Secured Claims of the Florida Department of Revenue has been paid by AYC or some other party prior to the Effective Date or agrees to a different treatment, AYC shall pay the Class 1B Claimholder 100% of the Allowed Amount of the Claim.  Commencing within thirty (30) days of the Effective Date,

AYC shall make principal and interest monthly payments to the holder of the Allowed Class 1B Claim for a period of four (4) years from the Effective Date or for a period of five (5) years following the Order for Relief, whichever occurs first, fully amortized over the payment period, with interest at the rate of 5%, or as otherwise determined by the Court, of a value, as of the Effective Date of the Plan, equal to the amount of its Allowed Secured Claim.  There shall be no prepayment penalty.

(c)    Impairment.  The Class 1B Claims is Impaired and the Class 1B Claimholder is entitled to vote to accept or reject the Plan.

### 4.02    Class 2 – Allowed Secured Claim of PNC Bank in or against AYC

(a)    Description.    Class 2 consists of the Allowed Secured Claim(s) of PNC Bank in or against AYC based upon a promissory note for the benefit of PNC Bank in the originally stated principal amount of $1,500,000 and Business Loan Agreement and Commercial Security Agreement (the "**First Loan**") and a VISA Commercial Card Agreement and Commercial Security Agreement (the "**Second Loan**").  PNC Bank filed its UCC-1 Financing Statements as it relates to the First Loan and Second Loan on September 13, 2011 (Doc. No. 2011-5299706).  On March 26, 2013, PNC Bank filed proof of claim no. 54 in the amount of $1,548,173.64 in connection with the First Loan and proof of claim no. 55 in the amount of $1,016,343 in connection with the Second Loan.

Pursuant to the UCC-1 Financing Statements on the First Loan and the Second Loan, PNC Bank has a security interest in the following:  all Assets of AYC, of every kind and nature, now existing and hereafter acquired and arising and wherever located, including without limitation, accounts, deposit accounts, commercial tort claims, letter of credit rights, chattel paper, documents, instruments, investment property, general intangibles, software, goods, inventory, equipment, furniture and fixtures, all supporting obligations of the foregoing, and all cash and noncash proceeds and products of the foregoing and all additions and accessions thereto, substitutions therefore and replacements thereof ("**PNC Bank's Collateral**").

(b)    Treatment.  AYC and PNC Bank entered into a Stipulation for Settlement to resolve their disputes relating to the validity and amount of PNC Bank's claim and the value of PNC Bank's Collateral (the "**PNC Bank Stipulation**").  AYC filed a motion to approve the PNC Bank Stipulation on June 6, 2013, which was approved by this Court.  *See* ECF Nos. 109 & 134. Pursuant to the PNC Bank Stipulation, the parties stipulated that the value of PNC Bank's Collateral is $2,000,000. The pertinent terms of the PNC Bank Stipulation are set forth below, and to the extent any terms are inconsistent with the PNC Bank Stipulation, the terms of the Order approving the PNC Bank Stipulation will control.

PNC Bank's claim shall be treated as an allowed secured claim in the amount of $2,000,000 (the "**Allowed Secured Claim of PNC Bank**").   Except to the extent that the holder of the Allowed Secured Claim of PNC Bank has been paid or agrees to a different treatment, in full satisfaction, settlement and release of PNC Bank's Allowed Secured Claim against AYC, AYC shall make fifty-nine (59) monthly payments of $13,200.00 which includes principal and

interest at the rate of five percent (5%) to PNC Bank, commencing on May 15, 2013[1], amortized over twenty (20) years.  Additionally, once a year, AYC shall make a payment in the amount equal to eighty percent (80%) of its net annual income (as calculated on December 31st) to PNC Bank as a principal paydown.  Such net annual income shall be based upon an annual financial statement prepared by an outside CPA and delivered to PNC Bank.  Such payment of net annual income shall be made on or prior to March 31 for each year following the PNC Bank Stipulation until the loan is fully paid.  AYC shall pay the entire outstanding principal balance of PNC Bank's Allowed Secured Claim, together with accrued but unpaid interest, on or before the sixty (60) month payment date.

There shall be no prepayment penalty.  PNC Bank shall retain any and all liens and other rights until such time as the proposed payments herein have been satisfied.  Additionally, AYC as the Reorganized Debtor shall pledge its stock to PNC Bank as additional security until the proposed payments to PNC Bank have been satisfied.  Upon completion of the payments described herein and in the PNC Bank Stipulation, PNC Bank shall release its liens on all property retained by AYC and property acquired post-petition.  Within thirty (30) days of completion of the aforementioned payments, PNC Bank shall file and record in the public records, a satisfaction of lien, or any other document(s) necessary to release the liens in favor of PNC Bank against AYC that are encumbering any assets of AYC.

In the event AYC defaults, PNC Bank shall serve written notice of default upon AYC who shall have ten (10) calendar days from the transmission of the notice to cure said default (the "**Cure Period**").  In the event of default, should the Cure Period expire without cure by AYC, AYC waives any claims, defenses and/or offsets to the Allowed Secured Claim of PNC Bank and agrees, promises and covenants not to raise or assert any such claims, causes of action, defenses and/or offsets against PNC Bank in any civil proceeding or otherwise as it related to the Allowed Secured Claim of PNC Bank, except, AYC may contest whether or not a default occurred, the amount of payments made to PNC Bank and the amount of PNC Bank's Allowed Secured Claim based on any such payments made.  However, AYC may not raise any other defenses, excuses, alleged justifications, claims, offsets, causes of actions or other basis to contest any default.

PNC shall retain its liens, as they existed as of AYC's Petition Date.  In addition, PNC will receive a pledge of one hundred percent of the newly issued stock in AYC until PNC is repaid in full pursuant to these terms.

(c)    Impairment.  The Class 2 Claims are Unimpaired and the Class 2 Claimholder is entitled to vote to accept or reject the Plan.

### 4.03    Class 3 – Allowed Secured Claim of Trane in or against AYC

(a)    Description.  Class 3 consists of the Allowed Secured Claim of Trane in or against AYC in the amount of approximately $558,470.10.  Pursuant to a Program Letter and

---

[1]    AYC shall escrow all required payments to be made to PNC Bank until the Bankruptcy Court enters an Order confirming the Plan.  AYC shall be authorized and directed to release such escrowed funds to PNC Bank once the Order confirming the Plan becomes a final Order.

Inventory Credit Agreement, Trane has a security interest in or against AYC in the following: (i) all prime inventory; (ii) all documents referred to prime inventory; (iii) all books and records; (iv) all accounts, instruments, and chattel paper constituting proceeds of any prime inventory; and (v) all proceeds and products of all or any of the collateral described herein above ("**Trane's Collateral**"). Trane filed with the Florida Secured Transaction Registry its UCC Financing Statement against AYC. On April 2, 2013, Trane filed a proof of claim (claim no. 56 in AYC's Case) against AYC claiming the amount of $612,175.05.

(b)     Treatment.  AYC and Trane entered into a Stipulation for Settlement on or about June 12, 2013 to resolve their disputes relating to the validity and amount of Trane's claim and the value of Trane's Collateral (the "**Trane Stipulation**").  AYC filed a motion to approve the Trane Stipulation on June 12, 2013, which was approved by this Court.  *See* ECF Nos. 116 & 133.  The pertinent terms of the Trane Stipulation are set forth below, and to the extent any terms are inconsistent with the Trane Stipulation, the terms of the Order approving the Trane Stipulation will control.

Trane is a critical vendor of AYC as the continued sales of its products and honoring of its warranties are necessary to the success and re-organization of AYC and Trane's filed proof of claim no. 56 in AYC's Case as a secured creditor in the sum of $612,175.05 shall be Allowed (the "**Allowed Secured Claim of Trane**").  Except to the extent that the holder of the Allowed Secured Claim of Trane has been paid or agrees to a different treatment, in full satisfaction, settlement and release of Trane's Allowed Secured Claim against AYC, AYC shall make equal principal and interest monthly payments to Trane, commencing on June 15, 2013[2], over a period of ninety-two (92) months, with interest at a rate of 5%.  The entire indebtedness owed to Trane on account of its Allowed Secured Claim shall amortize over the ninety-two (92) month period.

There shall be no prepayment penalty.  Trane shall retain any and all Liens and other rights until such time as the proposed payments herein have been satisfied.  Upon completion of the payments described herein, Trane shall release its Class 3 Liens on all property retained by AYC and property acquired post-petition.  Within thirty (30) days of completion of the Class 3 plan payments, Trane shall file and record in the public records, a satisfaction of Lien, or any other document(s) necessary to release the Class 3 Liens in favor of Trane against AYC that are encumbering any Assets of AYC.

Pursuant to the Trane Stipulation, Trane agrees to allow AYC to purchase and exchange any products from Trane so long as AYC is not in default under the terms of the Trane Stipulation and prepays (if applicable) for any such products. Trane is not agreeing to allow AYC to purchase products on a COD basis. AYC will have to establish a pre-pay account directly with Trane whereby AYC will only be able to purchase new products by drawing down against all clear funds it has advanced to Trane in the prepay account. In an effort to avoid any confusion, if AYC presents Trane with a cashier's check, said payment will constitute cleared

---

[2]     AYC shall escrow all required payments to be made to Trane until the Bankruptcy Court enters an Order confirming the Plan.  AYC shall be authorized and directed to pay and release such escrowed funds to Trane with all payments being made payable to Richard J. Stone, P.A., Trust Account and mailed to Richard J. Stone, P. A. at Two Datran Center 9130 S. Dadeland Blvd. Penthouse 1-A, including all future settlement payments due under the Trane Stipulation once the Order confirming the Plan becomes a final Order.

funds. AYC may begin prepaying and/or exchanging for said products upon Court approval of the Trane Stipulation. With respect to any parts or products subject to any Trane warranties, Trane reserves all of its contractual rights and remedies regarding the inspection and honoring of all warranty claims from AYC which shall be handled strictly by AYC complying with all of Trane's warranty terms and conditions. In the event AYC performs warranty work pursuant to Trane's terms and conditions, AYC will only be entitled to receive a credit memo for any labor provided for said services and not a cash payment which credit will be applied against the remaining balance due (the "**Labor Credit**"). The Labor Credit only applies to labor charges and does not affect AYC's ability to exchange parts or products subject to any Trane warranties.

(c)      <u>Impairment</u>. The Class 3 Claims are Impaired and the Class 3 Claimholder is entitled to vote to accept or reject the Plan.

### 4.04      Class 4 – Allowed Secured Claims of Ford in or against AYC

Classes 4a through 4ee consists of the Allowed Secured Claims of Ford in or against AYC, as described below. The Class 4a through 4ee Claims are Impaired and the Class 4a through 4ee Claimholders are entitled to vote to accept or reject the Plan.

#### a.    Class 4a – Allowed Secured Claim of Ford as it relates to the 1858 Vehicle.

Class 4a consists of the Allowed Secured Claim of Ford as it relates to the 1858 Vehicle. Ford filed proof of claim no. 18 in the amount of $5,265.79 in AYC's Case as it relates to the 1858 Vehicle. Pursuant to the Valuation Order, Ford has an Allowed Secured Claim in the amount of $5,000 with respect to the 1858 Vehicle, and an Allowed General Undersecured Claim for the remainder.

Except to the extent that the holder of the Allowed Class 4a Claim has been paid prior to the Effective Date or agrees to a different treatment, in full satisfaction, settlement and release of the Class 4a Claims against AYC, AYC shall make equal principal and interest monthly payments to Ford as it relates to the 1858 Vehicle over a period of sixty (60) months, with interest at a rate of 5%. The entire indebtedness owed to Ford on account of its Allowed Class 4a Claim shall amortize over the sixty (60) month period. AYC estimates the monthly payment will be $94.36.

There shall be no prepayment penalty. Ford shall retain any and all Liens and other rights until such time as the proposed payments herein have been satisfied. Upon completion of the payments described herein, Ford shall release its Class 4a Liens on all property retained by AYC and property acquired post-petition. Within thirty (30) days of completion of the Class 4a plan payments, Ford shall file and record in the public records, a satisfaction of Lien, or any other document(s) necessary to release the Class 4a Liens in favor of Ford against AYC that are encumbering any Assets of AYC.

#### b.    Class 4b – Allowed Secured Claim of Ford as it relates to the 6746 Vehicle.

Class 4b consists of the Allowed Secured Claim of Ford as it relates to the 6746 Vehicle. Ford filed proof of claim no. 19 in the amount of $5,758.80 in AYC's Case as it relates to the

6746 Vehicle. Pursuant to the Valuation Order, Ford has an Allowed Secured Claim in the amount of $5,500 with respect to the 6746 Vehicle, and an Allowed General Undersecured Claim for the remainder.

Except to the extent that the holder of the Allowed Class 4b Claim has been paid prior to the Effective Date or agrees to a different treatment, in full satisfaction, settlement and release of the Class 4b Claims against AYC, AYC shall make equal principal and interest monthly payments to Ford as it relates to the 6746 Vehicle over a period of sixty (60) months, with interest at a rate of 5%. The entire indebtedness owed to Ford on account of its Allowed Class 4b Claim shall amortize over the sixty (60) month period. AYC estimates the monthly payment will be $103.79.

There shall be no prepayment penalty. Ford shall retain any and all Liens and other rights until such time as the proposed payments herein have been satisfied. Upon completion of the payments described herein, Ford shall release its Class 4b Liens on all property retained by AYC and property acquired post-petition. Within thirty (30) days of completion of the Class 4b plan payments, Ford shall file and record in the public records, a satisfaction of Lien, or any other document(s) necessary to release the Class 4b Liens in favor of Ford against AYC that are encumbering any Assets of AYC.

    c.  **Class 4c – Allowed Secured Claim of Ford as it relates to the 6269 Vehicle.**

Class 4c consists of the Allowed Secured Claim of Ford as it relates to the 6269 Vehicle. Ford filed proof of claim no. 20 in the amount of $9,022.32 in AYC's Case as it relates to the 6269 Vehicle.

Except to the extent that the holder of the Allowed Class 4a Claim has been paid prior to the Effective Date or agrees to a different treatment, in full satisfaction, settlement and release of the Class 4c Claims against AYC, AYC shall make equal principal and interest monthly payments to Ford as it relates to the 6269 Vehicle over a period of sixty (60) months, with interest at a rate of 5%. The entire indebtedness owed to Ford on account of its Allowed Class 4c Claim shall amortize over the sixty (60) month period. AYC estimates the monthly payment will be $170.26.

There shall be no prepayment penalty. Ford shall retain any and all Liens and other rights until such time as the proposed payments herein have been satisfied. Upon completion of the payments described herein, Ford shall release its Class 4c Liens on all property retained by AYC and property acquired post-petition. Within thirty (30) days of completion of the Class 4c plan payments, Ford shall file and record in the public records, a satisfaction of Lien, or any other document(s) necessary to release the Class 4c Liens in favor of Ford against AYC that are encumbering any Assets of AYC.

    d.  **Class 4d – Allowed Secured Claim of Ford as it relates to the 6051 Vehicle.**

Class 4d consists of the Allowed Secured Claim of Ford as it relates to the 6051 Vehicle. Ford filed proof of claim no. 21 in the amount of $9,464.25 in AYC's Case as it relates to the 6051 Vehicle.

Except to the extent that the holder of the Allowed Class 4d Claim has been paid prior to the Effective Date or agrees to a different treatment, in full satisfaction, settlement and release of the Class 4d Claims against AYC, AYCshall make equal principal and interest monthly payments to Ford as it relates to the 6051 Vehicle over a period of sixty (60) months, with interest at a rate of 5%. The entire indebtedness owed to Ford on account of its Allowed Class 4d Claim shall amortize over the sixty (60) month period. AYC estimates the monthly payment will be $178.60.

There shall be no prepayment penalty. Ford shall retain any and all Liens and other rights until such time as the proposed payments herein have been satisfied. Upon completion of the payments described herein, Ford shall release its Class 4d Liens on all property retained by AYC and property acquired post-petition. Within thirty (30) days of completion of the Class 4d plan payments, Ford shall file and record in the public records, a satisfaction of Lien, or any other document(s) necessary to release the Class 4d Liens in favor of Ford against AYC that are encumbering any Assets of AYC.

   e.   **Class 4e – Allowed Secured Claim of Ford as it relates to the 3992 Vehicle.**

Class 4e consists of the Allowed Secured Claim of Ford as it relates to the 3992 Vehicle. Ford filed proof of claim no. 22 in the amount of $10,100.54 in AYC's Case as it relates to the 3992 Vehicle. Pursuant to the Valuation Order, Ford has an Allowed Secured Claim in the amount of $7,000 with respect to the 3992 Vehicle, and an Allowed General Undersecured Claim for the remainder.

Except to the extent that the holder of the Allowed Class 4e Claim has been paid prior to the Effective Date or agrees to a different treatment, in full satisfaction, settlement and release of the Class 4e Claims against AYC, AYC shall make equal principal and interest monthly payments to Ford as it relates to the 3992 Vehicle over a period of sixty (60) months, with interest at a rate of 5%. The entire indebtedness owed to Ford on account of its Allowed Class 4e Claim shall amortize over the sixty (60) month period. AYC estimates the monthly payment will be $190.61.

There shall be no prepayment penalty. Ford shall retain any and all Liens and other rights until such time as the proposed payments herein have been satisfied. Upon completion of the payments described herein, Ford shall release its Class 4e Liens on all property retained by AYC and property acquired post-petition. Within thirty (30) days of completion of the Class 4e plan payments, Ford shall file and record in the public records, a satisfaction of Lien, or any other document(s) necessary to release the Class 4e Liens in favor of Ford against AYC that are encumbering any Assets of AYC.

   f.   **Class 4f – Allowed Secured Claim of Ford as it relates to the 5919 Vehicle.**

Class 4f consists of the Allowed Secured Claim of Ford as it relates to the 5919 Vehicle. Ford filed proof of claim no. 23 in the amount of $9,868.31 in AYC's Case as it relates to the 5919 Vehicle.

Except to the extent that the holder of the Allowed Class 4f Claim has been paid prior to the Effective Date or agrees to a different treatment, in full satisfaction, settlement and release of the Class 4f Claims against AYC, AYC shall make equal principal and interest monthly payments to Ford as it relates to the 5919 Vehicle over a period of sixty (60) months, with interest at a rate of 5%. The entire indebtedness owed to Ford on account of its Allowed Class 4f Claim shall amortize over the sixty (60) month period. AYC estimates the monthly payment will be $186.23.

There shall be no prepayment penalty. Ford shall retain any and all Liens and other rights until such time as the proposed payments herein have been satisfied. Upon completion of the payments described herein, Ford shall release its Class 4f Liens on all property retained by AYC and property acquired post-petition. Within thirty (30) days of completion of the Class 4f plan payments, Ford shall file and record in the public records, a satisfaction of Lien, or any other document(s) necessary to release the Class 4f Liens in favor of Ford against AYC that are encumbering any Assets of AYC.

g. **Class 4g – Allowed Secured Claim of Ford as it relates to the 6017 Vehicle.**

Class 4g consists of the Allowed Secured Claim of Ford as it relates to the 6017 Vehicle. Ford filed proof of claim no. 24 in the amount of $3,816.90 in AYC's Case as it relates to the 6017 Vehicle.

Except to the extent that the holder of the Allowed Class 4g Claim has been paid prior to the Effective Date or agrees to a different treatment, in full satisfaction, settlement and release of the Class 4g Claims against AYC, AYC shall make equal principal and interest monthly payments to Ford as it relates to the 6017 Vehicle over a period of sixty (60) months, with interest at a rate of 5%. The entire indebtedness owed to Ford on account of its Allowed Class 4g Claim shall amortize over the sixty (60) month period. AYC estimates the monthly payment will be $72.03.

There shall be no prepayment penalty. Ford shall retain any and all Liens and other rights until such time as the proposed payments herein have been satisfied. Upon completion of the payments described herein, Ford shall release its Class 4g Liens on all property retained by AYC and property acquired post-petition. Within thirty (30) days of completion of the Class 4g plan payments, Ford shall file and record in the public records, a satisfaction of Lien, or any other document(s) necessary to release the Class 4g Liens in favor of Ford against AYC that are encumbering any Assets of AYC.

h. **Class 4h – Allowed Secured Claim of Ford as it relates to the 3712 Vehicle.**

Class 4h consists of the Allowed Secured Claim of Ford as it relates to the 3712 Vehicle. Ford filed proof of claim no. 25 in the amount of $1,346.76 in AYC's Case as it relates to the 3712 Vehicle.

Except to the extent that the holder of the Allowed Class 4h Claim has been paid prior to the Effective Date or agrees to a different treatment, in full satisfaction, settlement and release of the Class 4h Claims against AYC, AYC shall make equal principal and interest monthly

payments to Ford as it relates to the 3712 Vehicle over a period of sixty (60) months, with interest at a rate of 5%. The entire indebtedness owed to Ford on account of its Allowed Class 4h Claim shall amortize over the sixty (60) month period. AYC estimates the monthly payment will be $25.42.

There shall be no prepayment penalty. Ford shall retain any and all Liens and other rights until such time as the proposed payments herein have been satisfied. Upon completion of the payments described herein, Ford shall release its Class 4h Liens on all property retained by AYC and property acquired post-petition. Within thirty (30) days of completion of the Class 4h plan payments, Ford shall file and record in the public records, a satisfaction of Lien, or any other document(s) necessary to release the Class 4h Liens in favor of Ford against AYC that are encumbering any Assets of AYC.

    i.   **Class 4i – Allowed Secured Claim of Ford as it relates to the 7646 Vehicle.**

Class 4i consists of the Allowed Secured Claim of Ford as it relates to the 7646 Vehicle. Ford filed proof of claim no. 26 in the amount of $2,775.43 in AYC's Case as it relates to the 7646 Vehicle.

Except to the extent that the holder of the Allowed Class 4i Claim has been paid prior to the Effective Date or agrees to a different treatment, in full satisfaction, settlement and release of the Class 4i Claims against AYC, AYC shall make equal principal and interest monthly payments to Ford as it relates to the 7646 Vehicle over a period of sixty (60) months, with interest at a rate of 5%. The entire indebtedness owed to Ford on account of its Allowed Class 4i Claim shall amortize over the sixty (60) month period. AYC estimates the monthly payment will be $52.38.

There shall be no prepayment penalty. Ford shall retain any and all Liens and other rights until such time as the proposed payments herein have been satisfied. Upon completion of the payments described herein, Ford shall release its Class 4i Liens on all property retained by AYC and property acquired post-petition. Within thirty (30) days of completion of the Class 4i plan payments, Ford shall file and record in the public records, a satisfaction of Lien, or any other document(s) necessary to release the Class 4i Liens in favor of Ford against AYC that are encumbering any Assets of AYC.

    j.   **Class 4j – Allowed Secured Claim of Ford as it relates to the 4810 Vehicle.**

Class 4j consists of the Allowed Secured Claim of Ford as it relates to the 4810 Vehicle. Ford filed proof of claim no. 27 in the amount of $6,239.71 in AYC's Case as it relates to the 4810 Vehicle.

Except to the extent that the holder of the Allowed Class 4j Claim has been paid prior to the Effective Date or agrees to a different treatment, in full satisfaction, settlement and release of the Class 4j Claims against AYC, AYC shall make equal principal and interest monthly payments to Ford as it relates to the 4810 Vehicle over a period of sixty (60) months, with interest at a rate of 5%. The entire indebtedness owed to Ford on account of its Allowed Class 4j

Claim shall amortize over the sixty (60) month period.  AYC estimates the monthly payment will be $117.75.

There shall be no prepayment penalty.  Ford shall retain any and all Liens and other rights until such time as the proposed payments herein have been satisfied.  Upon completion of the payments described herein, Ford shall release its Class 4j Liens on all property retained by AYC and property acquired post-petition.  Within thirty (30) days of completion of the Class 4j plan payments, Ford shall file and record in the public records, a satisfaction of Lien, or any other document(s) necessary to release the Class 4j Liens in favor of Ford against AYC that are encumbering any Assets of AYC.

   k.  **Class 4k – Allowed Secured Claim of Ford as it relates to the 2366 Vehicle.**

Class 4k consists of the Allowed Secured Claim of Ford as it relates to the 2366 Vehicle. Ford filed proof of claim no. 28 in the amount of $5,252.80 in AYC's Case as it relates to the 2366 Vehicle.

Except to the extent that the holder of the Allowed Class 4k Claim has been paid prior to the Effective Date or agrees to a different treatment, in full satisfaction, settlement and release of the Class 4k Claims against AYC, AYC shall make equal principal and interest monthly payments to Ford as it relates to the 2366 Vehicle over a period of sixty (60) months, with interest at a rate of 5%.  The entire indebtedness owed to Ford on account of its Allowed Class 4k Claim shall amortize over the sixty (60) month period.  AYC estimates the monthly payment will be $99.13.

There shall be no prepayment penalty.  Ford shall retain any and all Liens and other rights until such time as the proposed payments herein have been satisfied.  Upon completion of the payments described herein, Ford shall release its Class 4k Liens on all property retained by AYC and property acquired post-petition.  Within thirty (30) days of completion of the Class 4k plan payments, Ford shall file and record in the public records, a satisfaction of Lien, or any other document(s) necessary to release the Class 4k Liens in favor of Ford against AYC that are encumbering any Assets of AYC.

   l.  **Class 4l – Allowed Secured Claim of Ford as it relates to the 3814 Vehicle.**

Class 4l consists of the Allowed Secured Claim of Ford as it relates to the 3814 Vehicle. Ford filed proof of claim no. 29 in the amount of $4,884.84 in AYC's Case as it relates to the 3814 Vehicle.

Except to the extent that the holder of the Allowed Class 4l Claim has been paid prior to the Effective Date or agrees to a different treatment, in full satisfaction, settlement and release of the Class 4l Claims against AYC, AYC shall make equal principal and interest monthly payments to Ford as it relates to the 3814 Vehicle over a period of sixty (60) months, with interest at a rate of 5%.  The entire indebtedness owed to Ford on account of its Allowed Class 4l Claim shall amortize over the sixty (60) month period.  AYC estimates the monthly payment will be $92.18.

There shall be no prepayment penalty.  Ford shall retain any and all Liens and other rights until such time as the proposed payments herein have been satisfied.  Upon completion of the payments described herein, Ford shall release its Class 4l Liens on all property retained by AYC and property acquired post-petition.  Within thirty (30) days of completion of the Class 4l plan payments, Ford shall file and record in the public records, a satisfaction of Lien, or any other document(s) necessary to release the Class 4l Liens in favor of Ford against AYC that are encumbering any Assets of AYC.

m.  **Class 4m – Allowed Secured Claim of Ford as it relates to the 3982 Vehicle.**

Class 4m consists of the Allowed Secured Claim of Ford as it relates to the 3982 Vehicle. Ford filed proof of claim no. 31 in the amount of $5,765.96 in AYC's Case as it relates to the 3982 Vehicle.

Except to the extent that the holder of the Allowed Class 4m Claim has been paid prior to the Effective Date or agrees to a different treatment, in full satisfaction, settlement and release of the Class 4m Claims against AYC, AYC shall make equal principal and interest monthly payments to Ford as it relates to the 3982 Vehicle over a period of sixty (60) months, with interest at a rate of 5%.  The entire indebtedness owed to Ford on account of its Allowed Class 4m Claim shall amortize over the sixty (60) month period.  AYC estimates the monthly payment will be $108.81.

There shall be no prepayment penalty.  Ford shall retain any and all Liens and other rights until such time as the proposed payments herein have been satisfied.  Upon completion of the payments described herein, Ford shall release its Class 4m Liens on all property retained by AYC and property acquired post-petition.  Within thirty (30) days of completion of the Class 4m plan payments, Ford shall file and record in the public records, a satisfaction of Lien, or any other document(s) necessary to release the Class 4m Liens in favor of Ford against AYC that are encumbering any Assets of AYC.

n.  **Class 4n – Allowed Secured Claim of Ford as it relates to the 3735 Vehicle.**

Class 4n consists of the Allowed Secured Claim of Ford as it relates to the 3735 Vehicle. Ford filed proof of claim no. 32 in the amount of $10,100.54 in AYC's Case as it relates to the 3735 Vehicle.  Pursuant to the Valuation Order, Ford has an Allowed Secured Claim in the amount of $7,000 with respect to the 3735 Vehicle, and an Allowed General Undersecured Claim for the remainder.

Except to the extent that the holder of the Allowed Class 4n Claim has been paid prior to the Effective Date or agrees to a different treatment, in full satisfaction, settlement and release of the Class 4n Claims against AYC, AYC shall make equal principal and interest monthly payments to Ford as it relates to the 3735 Vehicle over a period of sixty (60) months, with interest at a rate of 5%.  The entire indebtedness owed to Ford on account of its Allowed Class 4n Claim shall amortize over the sixty (60) month period.  AYC estimates the monthly payment will be $132.10.

There shall be no prepayment penalty.  Ford shall retain any and all Liens and other rights until such time as the proposed payments herein have been satisfied.  Upon completion of the payments described herein, Ford shall release its Class 4n Liens on all property retained by AYC and property acquired post-petition.  Within thirty (30) days of completion of the Class 4n plan payments, Ford shall file and record in the public records, a satisfaction of Lien, or any other document(s) necessary to release the Class 4n Liens in favor of Ford against AYC that are encumbering any Assets of AYC.

   o.  **Class 4o – Allowed Secured Claim of Ford as it relates to the 4734 Vehicle.**

Class 4o consists of the Allowed Secured Claim of Ford as it relates to the 4734 Vehicle.  Ford filed proof of claim no. 33 in the amount of $11,007.60 in AYC's Case as it relates to the 4734 Vehicle.  Pursuant to the Valuation Order, Ford has an Allowed Secured Claim in the amount of $7,500 with respect to the 4734 Vehicle, and an Allowed General Undersecured Claim for the remainder.

Except to the extent that the holder of the Allowed Class 4o Claim has been paid prior to the Effective Date or agrees to a different treatment, in full satisfaction, settlement and release of the Class 4o Claims against AYC, AYC shall make equal principal and interest monthly payments to Ford as it relates to the 4734 Vehicle over a period of sixty (60) months, with interest at a rate of 5%.  The entire indebtedness owed to Ford on account of its Allowed Class 4o Claim shall amortize over the sixty (60) month period.  AYC estimates the monthly payment will be $141.53.

There shall be no prepayment penalty.  Ford shall retain any and all Liens and other rights until such time as the proposed payments herein have been satisfied.  Upon completion of the payments described herein, Ford shall release its Class 4o Liens on all property retained by AYC and property acquired post-petition.  Within thirty (30) days of completion of the Class 4o plan payments, Ford shall file and record in the public records, a satisfaction of Lien, or any other document(s) necessary to release the Class 4o Liens in favor of Ford against AYC that are encumbering any Assets of AYC.

   p.  **Class 4p – Allowed Secured Claim of Ford as it relates to the 2075 Vehicle.**

Class 4p consists of the Allowed Secured Claim of Ford as it relates to the 2075 Vehicle.  Ford filed proof of claim no. 34 in the amount of $9,464.25 in AYC's Case as it relates to the 2075 Vehicle.  Pursuant to the Valuation Order, Ford has an Allowed Secured Claim in the amount of $7,000 with respect to the 2075 Vehicle, and an Allowed General Undersecured Claim for the remainder.

Except to the extent that the holder of the Allowed Class 4p Claim has been paid prior to the Effective Date or agrees to a different treatment, in full satisfaction, settlement and release of the Class 4p Claims against AYC, AYC shall make equal principal and interest monthly payments to Ford as it relates to the 2075 Vehicle over a period of sixty (60) months, with interest at a rate of 5%.  The entire indebtedness owed to Ford on account of its Allowed Class 4p Claim shall amortize over the sixty (60) month period.  AYC estimates the monthly payment will be $132.10.

There shall be no prepayment penalty. Ford shall retain any and all Liens and other rights until such time as the proposed payments herein have been satisfied. Upon completion of the payments described herein, Ford shall release its Class 4p Liens on all property retained by AYC and property acquired post-petition. Within thirty (30) days of completion of the Class 4p plan payments, Ford shall file and record in the public records, a satisfaction of Lien, or any other document(s) necessary to release the Class 4p Liens in favor of Ford against AYC that are encumbering any Assets of AYC.

q. **Class 4q – Allowed Secured Claim of Ford as it relates to the 1741 Vehicle.**

Class 4q consists of the Allowed Secured Claim of Ford as it relates to the 1741 Vehicle. Ford filed proof of claim no. 36 in the amount of $2,899.59 in AYC's Case as it relates to the 1741 Vehicle.

Except to the extent that the holder of the Allowed Class 4q Claim has been paid prior to the Effective Date or agrees to a different treatment, in full satisfaction, settlement and release of the Class 4q Claims against AYC, AYC shall make equal principal and interest monthly payments to Ford as it relates to the 1741 Vehicle over a period of sixty (60) months, with interest at a rate of 5%. The entire indebtedness owed to Ford on account of its Allowed Class 4q Claim shall amortize over the sixty (60) month period. AYC estimates the monthly payment will be $54.72.

There shall be no prepayment penalty. Ford shall retain any and all Liens and other rights until such time as the proposed payments herein have been satisfied. Upon completion of the payments described herein, Ford shall release its Class 4q Liens on all property retained by AYC and property acquired post-petition. Within thirty (30) days of completion of the Class 4q plan payments, Ford shall file and record in the public records, a satisfaction of Lien, or any other document(s) necessary to release the Class 4q Liens in favor of Ford against AYC that are encumbering any Assets of AYC.

r. **Class 4r – Allowed Secured Claim of Ford as it relates to the 5297 Vehicle.**

Class 4r consists of the Allowed Secured Claim of Ford as it relates to the 5297 Vehicle. Ford filed proof of claim no. 37 in the amount of $17,783.86 in AYC's Case as it relates to the 5297 Vehicle. Pursuant to the Valuation Order, Ford has an Allowed Secured Claim in the amount of $10,000 with respect to the 5297 Vehicle, and an Allowed General Undersecured Claim for the remainder.

Except to the extent that the holder of the Allowed Class 4r Claim has been paid prior to the Effective Date or agrees to a different treatment, in full satisfaction, settlement and release of the Class 4r Claims against AYC, AYC shall make equal principal and interest monthly payments to Ford as it relates to the 5297 Vehicle over a period of sixty (60) months, with interest at a rate of 5%. The entire indebtedness owed to Ford on account of its Allowed Class 4r Claim shall amortize over the sixty (60) month period. AYC estimates the monthly payment will be $188.71.

There shall be no prepayment penalty.  Ford shall retain any and all Liens and other rights until such time as the proposed payments herein have been satisfied.  Upon completion of the payments described herein, Ford shall release its Class 4r Liens on all property retained by AYC and property acquired post-petition.  Within thirty (30) days of completion of the Class 4r plan payments, Ford shall file and record in the public records, a satisfaction of Lien, or any other document(s) necessary to release the Class 4r Liens in favor of Ford against AYC that are encumbering any Assets of AYC.

s. **Class 4s – Allowed Secured Claim of Ford as it relates to the 6291 Vehicle.**

Class 4s consists of the Allowed Secured Claim of Ford as it relates to the 6291 Vehicle. Ford filed proof of claim no. 39 in the amount of $12,940.27 in AYC's Case as it relates to the 6291 Vehicle.  Pursuant to the Valuation Order, Ford has an Allowed Secured Claim in the amount of $10,000 with respect to the 6291 Vehicle, and an Allowed General Undersecured Claim for the remainder.

Except to the extent that the holder of the Allowed Class 4s Claim has been paid prior to the Effective Date or agrees to a different treatment, in full satisfaction, settlement and release of the Class 4s Claims against AYC, AYC shall make equal principal and interest monthly payments to Ford as it relates to the 6291 Vehicle over a period of sixty (60) months, with interest at a rate of 5%.  The entire indebtedness owed to Ford on account of its Allowed Class 4s Claim shall amortize over the sixty (60) month period.  AYC estimates the monthly payment will be $188.71.

There shall be no prepayment penalty.  Ford shall retain any and all Liens and other rights until such time as the proposed payments herein have been satisfied.  Upon completion of the payments described herein, Ford shall release its Class 4s Liens on all property retained by AYC and property acquired post-petition.  Within thirty (30) days of completion of the Class 4s plan payments, Ford shall file and record in the public records, a satisfaction of Lien, or any other document(s) necessary to release the Class 4s Liens in favor of Ford against AYC that are encumbering any Assets of AYC.

t. **Class 4t – Allowed Secured Claim of Ford as it relates to the 6299 Vehicle.**

Class 4t consists of the Allowed Secured Claim of Ford as it relates to the 6299 Vehicle. Ford filed proof of claim no. 40 in the amount of $12,940.64 in AYC's Case as it relates to the 6299 Vehicle.

Except to the extent that the holder of the Allowed Class 4t Claim has been paid prior to the Effective Date or agrees to a different treatment, in full satisfaction, settlement and release of the Class 4t Claims against AYC, AYC shall make equal principal and interest monthly payments to Ford as it relates to the 6299 Vehicle over a period of sixty (60) months, with interest at a rate of 5%.  The entire indebtedness owed to Ford on account of its Allowed Class 4t Claim shall amortize over the sixty (60) month period.  AYC estimates the monthly payment will be $244.21.

There shall be no prepayment penalty. Ford shall retain any and all Liens and other rights until such time as the proposed payments herein have been satisfied. Upon completion of the payments described herein, Ford shall release its Class 4t Liens on all property retained by AYC and property acquired post-petition. Within thirty (30) days of completion of the Class 4t plan payments, Ford shall file and record in the public records, a satisfaction of Lien, or any other document(s) necessary to release the Class 4t Liens in favor of Ford against AYC that are encumbering any Assets of AYC.

u. **Class 4u – Allowed Secured Claim of Ford as it relates to the 3443 Vehicle.**

Class 4u consists of the Allowed Secured Claim of Ford as it relates to the 3443 Vehicle. Ford filed proof of claim no. 41 in the amount of $4,073.71 in AYC's Case as it relates to the 3443 Vehicle.

Except to the extent that the holder of the Allowed Class 4u Claim has been paid prior to the Effective Date or agrees to a different treatment, in full satisfaction, settlement and release of the Class 4u Claims against AYC, AYC shall make equal principal and interest monthly payments to Ford as it relates to the 3443 Vehicle over a period of sixty (60) months, with interest at a rate of 5%. The entire indebtedness owed to Ford on account of its Allowed Class 4u Claim shall amortize over the sixty (60) month period. AYC estimates the monthly payment will be $76.88.

There shall be no prepayment penalty. Ford shall retain any and all Liens and other rights until such time as the proposed payments herein have been satisfied. Upon completion of the payments described herein, Ford shall release its Class 4u Liens on all property retained by AYC and property acquired post-petition. Within thirty (30) days of completion of the Class 4u plan payments, Ford shall file and record in the public records, a satisfaction of Lien, or any other document(s) necessary to release the Class 4u Liens in favor of Ford against AYC that are encumbering any Assets of AYC.

v. **Class 4v – Allowed Secured Claim of Ford as it relates to the 3573 Vehicle.**

Class 4v consists of the Allowed Secured Claim of Ford as it relates to the 3573 Vehicle. Ford filed proof of claim no. 42 in the amount of $11,007.60 in AYC's Case as it relates to the 3573 Vehicle. Pursuant to the Valuation Order, Ford has an Allowed Secured Claim in the amount of $7,500 with respect to the 3573 Vehicle, and an Allowed General Undersecured Claim for the remainder.

Except to the extent that the holder of the Allowed Class 4v Claim has been paid prior to the Effective Date or agrees to a different treatment, in full satisfaction, settlement and release of the Class 4v Claims against AYC, AYC shall make equal principal and interest monthly payments to Ford as it relates to the 3573 Vehicle over a period of sixty (60) months, with interest at a rate of 5%. The entire indebtedness owed to Ford on account of its Allowed Class 4v Claim shall amortize over the sixty (60) month period. AYC estimates the monthly payment will be $141.53.

There shall be no prepayment penalty.  Ford shall retain any and all Liens and other rights until such time as the proposed payments herein have been satisfied.  Upon completion of the payments described herein, Ford shall release its Class 4v Liens on all property retained by AYC and property acquired post-petition.  Within thirty (30) days of completion of the Class 4v plan payments, Ford shall file and record in the public records, a satisfaction of Lien, or any other document(s) necessary to release the Class 4v Liens in favor of Ford against AYC that are encumbering any Assets of AYC.

w.    **Class 4w – Allowed Secured Claim of Ford as it relates to the 3799 Vehicle.**

Class 4w consists of the Allowed Secured Claim of Ford as it relates to the 3799 Vehicle. Ford filed proof of claim no. 43 in the amount of $9,016.93 in AYC's Case as it relates to the 3799 Vehicle.  Pursuant to the Valuation Order, Ford has an Allowed Secured Claim in the amount of $4,000 with respect to the 3799 Vehicle, and an Allowed General Undersecured Claim for the remainder.

Except to the extent that the holder of the Allowed Class 4w Claim has been paid prior to the Effective Date or agrees to a different treatment, in full satisfaction, settlement and release of the Class 4w Claims against AYC, AYC shall make equal principal and interest monthly payments to Ford as it relates to the 3799 Vehicle over a period of sixty (60) months, with interest at a rate of 5%.  The entire indebtedness owed to Ford on account of its Allowed Class 4w Claim shall amortize over the sixty (60) month period.  AYC estimates the monthly payment will be $75.48.

There shall be no prepayment penalty.  Ford shall retain any and all Liens and other rights until such time as the proposed payments herein have been satisfied.  Upon completion of the payments described herein, Ford shall release its Class 4w Liens on all property retained by AYC and property acquired post-petition.  Within thirty (30) days of completion of the Class 4w plan payments, Ford shall file and record in the public records, a satisfaction of Lien, or any other document(s) necessary to release the Class 4w Liens in favor of Ford against AYC that are encumbering any Assets of AYC.

x.    **Class 4x – Allowed Secured Claim of Ford as it relates to the 3796 Vehicle.**

Class 4x consists of the Allowed Secured Claim of Ford as it relates to the 3796 Vehicle. Ford filed proof of claim no. 44 in the amount of $9,708.24 in AYC's Case as it relates to the 3796 Vehicle.  Pursuant to the Valuation Order, Ford has an Allowed Secured Claim in the amount of $9,000 with respect to the 3796 Vehicle, and an Allowed General Undersecured Claim for the remainder.

Except to the extent that the holder of the Allowed Class 4x Claim has been paid prior to the Effective Date or agrees to a different treatment, in full satisfaction, settlement and release of the Class 4x Claims against AYC, AYC shall make equal principal and interest monthly payments to Ford as it relates to the 3796 Vehicle over a period of sixty (60) months, with interest at a rate of 5%.  The entire indebtedness owed to Ford on account of its Allowed Class 4x Claim shall amortize over the sixty (60) month period.  AYC estimates the monthly payment will be $169.84.

There shall be no prepayment penalty. Ford shall retain any and all Liens and other rights until such time as the proposed payments herein have been satisfied. Upon completion of the payments described herein, Ford shall release its Class 4x Liens on all property retained by AYC and property acquired post-petition. Within thirty (30) days of completion of the Class 4x plan payments, Ford shall file and record in the public records, a satisfaction of Lien, or any other document(s) necessary to release the Class 4x Liens in favor of Ford against AYC that are encumbering any Assets of AYC.

### y. **Class 4y – Allowed Secured Claim of Ford as it relates to the 1340 Vehicle.**

Class 4y consists of the Allowed Secured Claim of Ford as it relates to the 1340 Vehicle. Ford filed proof of claim no. 45 in the amount of $6,289.57 in AYC's Case as it relates to the 1340 Vehicle.

Except to the extent that the holder of the Allowed Class 4y Claim has been paid prior to the Effective Date or agrees to a different treatment, in full satisfaction, settlement and release of the Class 4y Claims against AYC, AYC shall make equal principal and interest monthly payments to Ford as it relates to the 1340 Vehicle over a period of sixty (60) months, with interest at a rate of 5%. The entire indebtedness owed to Ford on account of its Allowed Class 4y Claim shall amortize over the sixty (60) month period. AYC estimates the monthly payment will be $118.69.

There shall be no prepayment penalty. Ford shall retain any and all Liens and other rights until such time as the proposed payments herein have been satisfied. Upon completion of the payments described herein, Ford shall release its Class 4y Liens on all property retained by AYC and property acquired post-petition. Within thirty (30) days of completion of the Class 4y plan payments, Ford shall file and record in the public records, a satisfaction of Lien, or any other document(s) necessary to release the Class 4y Liens in favor of Ford against AYC that are encumbering any Assets of AYC.

### z. **Class 4z – Allowed Secured Claim of Ford as it relates to the 8O27 Vehicle.**

Class 4z consists of the Allowed Secured Claim of Ford as it relates to the 8O27 Vehicle. Ford filed proof of claim no. 46 in the amount of $4,609.75 in AYC's Case as it relates to the 8O27 Vehicle. Pursuant to the Valuation Order, Ford has an Allowed Secured Claim in the amount of $3,500 with respect to the 8O27 Vehicle, and an Allowed General Undersecured Claim for the remainder.

Except to the extent that the holder of the Allowed Class 4z Claim has been paid prior to the Effective Date or agrees to a different treatment, in full satisfaction, settlement and release of the Class 4z Claims against AYC, AYC shall make equal principal and interest monthly payments to Ford as it relates to the 8O27 Vehicle over a period of sixty (60) months, with interest at a rate of 5%. The entire indebtedness owed to Ford on account of its Allowed Class 4z Claim shall amortize over the sixty (60) month period. AYC estimates the monthly payment will be $66.05.

There shall be no prepayment penalty. Ford shall retain any and all Liens and other rights until such time as the proposed payments herein have been satisfied. Upon completion of the payments described herein, Ford shall release its Class 4z Liens on all property retained by AYC and property acquired post-petition. Within thirty (30) days of completion of the Class 4z plan payments, Ford shall file and record in the public records, a satisfaction of Lien, or any other document(s) necessary to release the Class 4z Liens in favor of Ford against AYCr that are encumbering any Assets of AYC.

### aa. **Class 4aa – Allowed Secured Claim of Ford as it relates to the 7314 Vehicle.**

Class 4aa consists of the Allowed Secured Claim of Ford as it relates to the 7314 Vehicle. Ford filed proof of claim no. 47 in the amount of $12,253.28 in AYC's Case as it relates to the 7314 Vehicle. Pursuant to the Valuation Order, Ford has an Allowed Secured Claim in the amount of $5,000 with respect to the 7314 Vehicle, and an Allowed General Undersecured Claim for the remainder.

Except to the extent that the holder of the Allowed Class 4aa Claim has been paid prior to the Effective Date or agrees to a different treatment, in full satisfaction, settlement and release of the Class 4aa Claims against AYC, AYC shall make equal principal and interest monthly payments to Ford as it relates to the 7314 Vehicle over a period of sixty (60) months, with interest at a rate of 5%. The entire indebtedness owed to Ford on account of its Allowed Class 4aa Claim shall amortize over the sixty (60) month period. AYC estimates the monthly payment will be $94.36.

There shall be no prepayment penalty. Ford shall retain any and all Liens and other rights until such time as the proposed payments herein have been satisfied. Upon completion of the payments described herein, Ford shall release its Class 4aa Liens on all property retained by AYC and property acquired post-petition. Within thirty (30) days of completion of the Class 4aa plan payments, Ford shall file and record in the public records, a satisfaction of Lien, or any other document(s) necessary to release the Class 4aa Liens in favor of Ford against AYC that are encumbering any Assets of AYC.

### bb. **Class 4bb – Allowed Secured Claim of Ford as it relates to the 5458 Vehicle.**

Class 4bb consists of the Allowed Secured Claim of Ford as it relates to the 5458 Vehicle. Ford filed proof of claim no. 48 in the amount of $17,483.93 in AYC's Case as it relates to the 5458 Vehicle. Pursuant to the Valuation Order, Ford has an Allowed Secured Claim in the amount of $13,500 with respect to the 5458 Vehicle, and an Allowed General Undersecured Claim for the remainder.

Except to the extent that the holder of the Allowed Class 4bb Claim has been paid prior to the Effective Date or agrees to a different treatment, in full satisfaction, settlement and release of the Class 4bb Claims against AYC, AYC shall make equal principal and interest monthly payments to Ford as it relates to the 5458 Vehicle over a period of sixty (60) months, with interest at a rate of 5%. The entire indebtedness owed to Ford on account of its Allowed Class 4bb Claim shall amortize over the sixty (60) month period. AYC estimates the monthly payment will be $254.76.

There shall be no prepayment penalty.  Ford shall retain any and all Liens and other rights until such time as the proposed payments herein have been satisfied.  Upon completion of the payments described herein, Ford shall release its Class 4bb Liens on all property retained by AYC and property acquired post-petition.  Within thirty (30) days of completion of the Class 4bb plan payments, Ford shall file and record in the public records, a satisfaction of Lien, or any other document(s) necessary to release the Class 4bb Liens in favor of Ford against AYC that are encumbering any Assets of AYC.

cc.  **Class 4cc – Allowed Secured Claim of Ford as it relates to the 3081 Vehicle.**

Class 4cc consists of the Allowed Secured Claim of Ford as it relates to the 3081 Vehicle.  Ford filed proof of claim no. 49 in the amount of $4,630.58 in AYC's Case as it relates to the 3081 Vehicle.

Except to the extent that the holder of the Allowed Class 4cc Claim has been paid prior to the Effective Date or agrees to a different treatment, in full satisfaction, settlement and release of the Class 4cc Claims against AYC, AYC shall make equal principal and interest monthly payments to Ford as it relates to the 3081 Vehicle over a period of sixty (60) months, with interest at a rate of 5%.  The entire indebtedness owed to Ford on account of its Allowed Class 4cc Claim shall amortize over the sixty (60) month period.  AYC estimates the monthly payment will be $87.38.

There shall be no prepayment penalty.  Ford shall retain any and all Liens and other rights until such time as the proposed payments herein have been satisfied.  Upon completion of the payments described herein, Ford shall release its Class 4cc Liens on all property retained by AYC and property acquired post-petition.  Within thirty (30) days of completion of the Class 4cc plan payments, Ford shall file and record in the public records, a satisfaction of Lien, or any other document(s) necessary to release the Class 4cc Liens in favor of Ford against AYC that are encumbering any Assets of AYC.

dd.  **Class 4dd – Allowed Secured Claim of Ford as it relates to the 6803 Vehicle.**

Class 4dd consists of the Allowed Secured Claim of Ford as it relates to the 6803 Vehicle.  Ford filed proof of claim no. 50 in the amount of $8,054.43 in AYC's Case as it relates to the 6803 Vehicle.  Pursuant to the Valuation Order, Ford has an Allowed Secured Claim in the amount of $6,500 with respect to the 6803 Vehicle, and an Allowed General Undersecured Claim for the remainder.

Except to the extent that the holder of the Allowed Class 4dd Claim has been paid prior to the Effective Date or agrees to a different treatment, in full satisfaction, settlement and release of the Class 4dd Claims against AYC, AYC shall make equal principal and interest monthly payments to Ford as it relates to the 6803 Vehicle over a period of sixty (60) months, with interest at a rate of 5%.  The entire indebtedness owed to Ford on account of its Allowed Class 4dd Claim shall amortize over the sixty (60) month period.  AYC estimates the monthly payment will be $122.66.

There shall be no prepayment penalty. Ford shall retain any and all Liens and other rights until such time as the proposed payments herein have been satisfied. Upon completion of the payments described herein, Ford shall release its Class 4dd Liens on all property retained by AYC and property acquired post-petition. Within thirty (30) days of completion of the Class 4dd plan payments, Ford shall file and record in the public records, a satisfaction of Lien, or any other document(s) necessary to release the Class 4dd Liens in favor of Ford against AYC that are encumbering any Assets of AYC.

   ee. **Class 4ee – Allowed Secured Claim of Ford as it relates to the 1406 Vehicle.**

Class 4ee consists of the Allowed Secured Claim of Ford as it relates to the 1406 Vehicle. Ford filed proof of claim no. 51 in the amount of $7,840.69 in AYC's Case as it relates to the 1406 Vehicle.

Except to the extent that the holder of the Allowed Class 4ee Claim has been paid prior to the Effective Date or agrees to a different treatment, in full satisfaction, settlement and release of the Class 4ee Claims against AYC, AYC shall make equal principal and interest monthly payments to Ford as it relates to the 1406 Vehicle over a period of sixty (60) months, with interest at a rate of 5%. The entire indebtedness owed to Ford on account of its Allowed Class 4ee Claim shall amortize over the sixty (60) month period. AYC estimates the monthly payment will be $147.96.

There shall be no prepayment penalty. Ford shall retain any and all Liens and other rights until such time as the proposed payments herein have been satisfied. Upon completion of the payments described herein, Ford shall release its Class 4ee Liens on all property retained by AYC and property acquired post-petition. Within thirty (30) days of completion of the Class 4ee plan payments, Ford shall file and record in the public records, a satisfaction of Lien, or any other document(s) necessary to release the Class 4ee Liens in favor of Ford against AYC that are encumbering any Assets of AYC.

   **4.05    Class 5 – Allowed Secured Claims of Paradise Bank with respect to the Paradise Vehicles in or against AYC**

   (a)    Description. Class 5 consists of the Allowed Secured Claims of Paradise Bank in or against AYC based on Paradise Bank's security interest in the Paradise Vehicles. The Paradise Vehicles were defined in the definition section of the Plan as (i) 2008 Chevy Cobalt, VIN # 1GAL58X87176888; (ii) 2006 Ford Van, VIN # 1FTNE24L56DA51583; (iii) 2008 Ford Van, VIN # 1FTNE14W88DA09979; (iv) 2005 Chevy Van, VIN # 1GCGG29V751232763; and (v) 2007 Ford Van, VIN # 1FTNE24W97DA54689. As of April 2013, the balance owed to Paradise Bank on account of its Allowed Class 5 Claims was $11,589.67.

   (b)    Treatment. Except to the extent that the holder of the Class 5 Claim has been paid prior to the Effective Date or agrees to a different treatment, AYC will maintain its regular monthly payments to Paradise Bank on account of its Allowed Class 5 Claims until satisfied in full, in full satisfaction, settlement and release of all Class 5 Claims. AYC estimates the final payment will be in September 2013.

(c)    Impairment.  The Class 5 Claims are Unimpaired and the Class 5 Claimholders are not entitled to vote to accept or reject the Plan.

### 4.06    Class 6 – Allowed Secured Claim of Gemaire in or against AYC

(a)    Description.  Class 6 consists of the Allowed Secured Claim of Gemaire in or against AYC.  Pursuant to a Security Agreement entered into between AYC and Gemaire, Gemaire has a security interest in certain inventory, equipment, accounts, furniture, fixtures, equipment, accounts receivable, bank and/or depository accounts, and all other assets and proceeds relating to the foregoing ("**Gemaire's Collateral**").  On February 4, 2013, Gemaire filed a proof of claim (claim no. 3) against AYC in the amount of $1,446,057.62 and asserted that it holds a security interest in the Collateral up to a maximum value of $500,000 by virtue of that certain Security Agreement and UCC-1 Financing Statement filed with the Florida Secured Transaction Registry on March 23, 2009.

(b)    Treatment.  AYC and Gemaire entered into a Stipulation for Settlement on or about May 9, 2013 to resolve their disputes relating to the validity and amount of Gemaire's claim and the value of Gemaire's Collateral (the "**Gemaire Stipulation**").  AYC filed a motion to approve the Gemaire Stipulation on May 13, 2013, which was approved by this Court.  *See* ECF No. 83 & 117.  Pursuant to the Gemaire Stipulation, the parties stipulated that the value of the Gemaire Collateral is $75,000. The pertinent terms of the Gemaire Stipulation are set forth below, and to the extent any terms are inconsistent with the Gemaire Stipulation, the terms of the Order approving the Gemaire Stipulation will control.

Gemaire's claim shall be treated as an allowed secured claim in the amount of $75,000 (the "**Allowed Secured Claim of Gemaire**").    Except to the extent that the holder of the Allowed Secured Claim of Gemaire has been paid prior to the Effective Date or agrees to a different treatment, in full satisfaction, settlement and release of its Allowed Secured Claim against AYC, for the duration of sixty (60) months, commencing on May 15, 2013[3],  AYC shall make equal principal and interest monthly payments, with interest at a rate of 5% per annum, fully amortized over five (5) years, on an indebtedness of $75,000.  The remaining portion of Gemaire's Claim, totaling $1,371,057.60, shall be treated as an Allowed General Unsecured Claim.  The general unsecured dividend must be at least one percent (1%).  Within three (3) business days of the Court's approval of the Stipulation, AYC filed Amended Schedules removing from said Schedules any reference, notation or indication that any portion of Gemaire's claim in AYC's bankruptcy case is "disputed", "contingent" and/or "unliquidated".

There shall be no prepayment penalty.  Gemaire shall retain any and all liens and other rights until such time as the proposed payments herein have been satisfied.  Upon completion of the payments described herein and in the Gemaire Stipulation, Gemaire shall release its liens on all property retained by AYC and property acquired post-petition.  Within thirty (30) days of completion of the aforementioned payments, Gemaire shall file and record in the public records,

---

[3]        AYC shall escrow all required payments to be made to Gemaire until the Bankruptcy Court enters an Order confirming the Plan.  AYC shall be authorized and directed to release such escrowed funds to Gemaire once the Order confirming the Plan becomes a final Order.

a satisfaction of lien, or any other document(s) necessary to release the liens in favor of Gemaire against AYC that are encumbering any assets of AYC.

In the event AYC defaults, Gemaire shall serve written notice of default upon AYC who shall have ten (10) calendar days from the transmission of the notice to cure said default (the "**Cure Period**").  In the event of default, should the Cure Period expire without cure by AYC, AYC waives any claims, defenses, and/or offsets to the Allowed Secured Claim of Gemaire and agrees, promises and covenants not to raise or assert any such claims, causes of action, defenses and/or offsets against Gemaire in any civil proceeding or otherwise as it related to the Allowed Secured Claim of Gemaire, except, AYC may contest whether or not a default occurred, the amount of payments made to Gemaire and the amount of Gemaire's Allowed Secured Claim based on any such payments made.  However, AYC may not raise any other defenses, excuses, alleged justifications, claims, offsets, causes of actions or other basis to contest any default.

(c)    <u>Impairment</u>.  The Class 6 Claims are Impaired and the Class 6 Claimholder is entitled to vote to accept or reject the Plan.

### 4.07    Class 7 – Allowed Secured Claim of Merchant Cash in or against AYC

(a)    <u>Description.</u>  Class 7 consists of the Allowed Secured Claim of Merchant Cash in or against AYC.  Pursuant to a Merchant Agreement entered into between AYC and Merchant Cash and guaranteed by Thomas Smith Sr. and Thomas Smith Jr., Merchant Cash has a security interest in certain of AYC's future credit card, debit card, bank card and other charge card (credit card) receivables sold by AYC, as seller, and purchased by Merchant, as buyer ("**Merchant Cash's Collateral**").  On June 13, 2013, Merchant Cash filed a proof of claim (claim no. 87 in AYC's Case) against AYC in the amount of $314,006.20 and asserted that the amount of its secured claim is $314,006.20.

(b)    <u>Treatment.</u>  AYC and Merchant Cash entered into a Stipulation for Settlement on or about August 26, 2013 to resolve their disputes relating to the validity and amount of Merchant Cash's claim and the value of Merchant Cash's Collateral (the "**Merchant Cash Stipulation**").  AYC filed a motion to approve the Merchant Cash Stipulation on August 26, 2013.  *See* ECF No. 151.  Pursuant to the Merchant Cash Stipulation, the parties stipulated that the value of the Merchant Cash Collateral is $90,000. The pertinent terms of the Merchant Cash Stipulation are set forth below, and to the extent any terms are inconsistent with the Merchant Cash Stipulation, the terms of the  Order approving the Merchant Cash Stipulation will control. *See* ECF No. 166.

Merchant Cash's claim shall be treated as an allowed secured claim in the amount of $90,000 (the "**Allowed Secured Claim of Merchant Cash**").    Such agreement as to the validity, amount and value of Merchant Cash's claim shall have no res judicata effect should AYC's Chapter 11 case not be confirmed.  Except to the extent that the holder of the Allowed Secured Claim of Merchant Cash has been paid prior to the Effective Date or agrees to a different treatment, in full satisfaction, settlement and release of its Allowed Secured Claim against AYC, for the duration of sixty (60) months, commencing within thirty (30) days of the Effective Date, AYC shall make equal principal and interest monthly payments, with interest at a

rate of 5% per annum, fully amortized over five (5) years, on an indebtedness of $90,000. The remaining portion of Merchant Cash's Claim, totaling $224,006.20 (the "**Merchant Cash Deficiency**"), shall be treated as an Allowed General Unsecured Claim against AYC.

There shall be no prepayment penalty. Merchant Cash shall retain any and all Liens and other rights until such time as the proposed payments herein have been satisfied. Upon completion of the payments described herein and in the Merchant Cash Stipulation, Merchant Cash shall release its Liens on all property retained by AYC and property acquired post-petition. Within thirty (30) days of completion of the aforementioned payments, Merchant Cash shall file and record in the public records, a satisfaction of lien, or any other document(s) necessary to release the liens in favor of Merchant Cash against AYC that are encumbering any assets of AYC. Further, AYC and Merchant Cash stipulated, and through approval of the Merchant Cash Stipulation seek a judicial finding, that the adequate protection payment made to Merchant Cash in the amount of $14,125 were valid and authorized post-petition transfers. The list of the aforementioned adequate protection payments made to Merchant Cash from AYC since AYC's Petition Date is attached as Exhibit "A" to the Merchant Cash Stipulation.

In the event AYC defaults, Merchant Cash shall serve written notice of default upon AYC who shall have ten (10) calendar days from the transmission of the notice to cure said default (the "**Cure Period**"). In the event of default, should the Cure Period expire without cure by AYC, AYC waives any claims, defenses, and/or offsets to the Allowed Secured Claim of Merchant Cash and agrees, promises and covenants not to raise or assert any such claims, causes of action, defenses and/or offsets against Merchant Cash in any civil proceeding or otherwise as it related to the Allowed Secured Claim of Merchant Cash, except, AYC may contest whether or not a default occurred, the amount of payments made to Merchant Cash and the amount of Merchant Cash's Allowed Secured Claim based on any such payments made. However, AYC may not raise any other defenses, excuses, alleged justifications, claims, offsets, causes of actions or other basis to contest any default.

In exchange for the Secured Plan Payments and the Merchant Cash Deficiency being treated as an Allowed General Unsecured Claim in AYC's Plan, Merchant Cash and its officers, directors, agents, employees, representatives, attorneys, assignees, stockholders, members, and partners irrevocably and unconditionally waive, and forever release AYC from any and all claims, charges, complaints, counterclaims, actions, grievances for any act or omission up through the date of the Merchant Cash Stipulation, whether known or unknown, excepting only the Parties' obligations pursuant to the Merchant Cash Stipulation.

Likewise, AYC, for itself, and on behalf of its officers, directors, agents, employees, representatives, attorneys, assignees, stockholders, members, and partners, irrevocably and unconditionally waive and forever release Merchant Cash and its officers, directors, agents, employees, representatives, attorneys, assignees, stockholders, members, and partners from any and all claims, charges, complaints, counterclaims, actions, grievances for any act or omission up through the date of the Merchant Cash Stipulation, whether known or unknown, excepting only the Parties' obligations pursuant to the Merchant Cash Stipulation.

Additionally, Thomas Smith Sr., Thomas Smith Jr. and Merchant Cash shall also exchange mutual general releases, the terms of which shall be contained in the Stipulation for Settlement between Merchant Cash and Thomas Smith Sr. and Thomas Smith Jr. (the "**Smiths' Stipulation**"). The entry of an Order approving the terms of the Smiths' Stipulation in Thomas Smith Jr.'s bankruptcy case is a necessary and appropriate condition precedent to the Merchant Cash Stipulation.

The Merchant Cash Stipulation, however, in no way releases, discharges or waives any prospective or new claims arising from any breach of the Merchant Cash Stipulation, or that may arise from future transactions between the Parties.

(c)     Impairment.  The Class 7 Claims are Impaired and the Class 7 Claimholder is entitled to vote to accept or reject the Plan.

**4.08     Class 8– Allowed General Unsecured and Allowed General Undersecured Claims**

(a)     Description.  Class 8 consists of the Allowed General Unsecured Claims and Allowed General Undersecured Claims.  Based on a review of the Debtors' Schedules and the proofs of claim filed to date, the Debtors estimate the aggregate amount of Allowed Class 8 Claims will not exceed $5,257,946.27.

(b)     Treatment.  Except to the extent that the holder of a Claim within Class 8 has been paid prior to the Effective Date, or agrees to a different treatment, the holders of Allowed General Unsecured Claims and Allowed General Undersecured Claims shall receive a pro rata distribution of $100,000 over a period of five (5) years, to be paid by AYC in equal monthly payments, using an interest rate based on the current Prime Rate as published in the Wall Street Journal, which is currently 3.25%, in full satisfaction, settlement and release of all Class 8 Claims.  The first monthly payment shall commence within thirty (30) days of the Effective Date.  AYC estimates the aggregate monthly payment to be made to holders of Allowed Class 8 Claim will total approximately $1,808.

(c)     Impairment.  The Class 8 Claims are Impaired and are entitled to vote to accept or reject the Plan.

**4.09     Class 9 – Allowed Equity Interests**

(a)     Description.  Class 9 consists of the Allowed Equity Interests in the Debtors, which includes interests in any share of preferred stock, common stock or other instrument evidencing ownership interest in the Debtors, whether or not transferable, and any option, warranty, right, contractual or otherwise, to acquire any such interest.

(b)     Treatment.  The Debtors are cancelling its stock and reissuing same to be owned 100% by Thomas Smith Jr. in exchange for Thomas Smith Jr. agreeing to fund to the sum of $25,000 to assist AYC in funding the payments that need to be made at Confirmation. In addition, under the Plan, PNC Bank will receive a pledge of one hundred percent of the newly issued stock in AYC until PNC is repaid in full pursuant to these terms.  .  The holders of

Allowed Equity Interests in the Debtors shall not be entitled to receive any Distribution under the Plan on account of such Equity Interests.  The list of the Debtors' Equity Security Holders as of AYC's Petition Date and as of AYE's Petition Date is attached to the Disclosure Statement as **Exhibit "C."**

(c)      Impairment.  The Class 9 Claims are Impaired, but Class 9 Claimholders are not entitled to vote to accept or reject the Plan, as Class 9 Claimholders shall be deemed to have rejected the Plan.


# ARTICLE V
# PROVISIONS REGARDING VOTING AND DISTRIBUTIONS UNDER THE PLAN, ALLOWANCE OF CERTAIN CLAIMS, AND TREATMENT OF DISPUTED, CONTINGENT AND UNLIQUIDATED ADMINISTRATIVE EXPENSE CLAIMS, CLAIMS AND EQUITY INTERESTS

### 5.01    Voting of Claims and Equity Interests

The Bankruptcy Code entitles only holders of Impaired Claims or Equity Interests who receive some distribution under a proposed plan to vote to accept or reject that plan.  Claims in Classes 1, 2, 3, 4, 6, 7, 8 and 9 are Impaired under this Plan.  Holders of Claims or Equity Interests that are Unimpaired under a proposed plan are conclusively presumed to have accepted that plan and are not entitled to vote on it.  Holders of classes of Claims or Equity Interests that will receive no distributions under a proposed plan are conclusively presumed to reject that plan and, therefore, also not entitled to vote on it.

Any Ballot not filed in accordance with the filing instructions on the Ballot pertaining to this Plan shall not be counted for voting purposes.

### 5.02    Method of Distribution Under the Plan

(a)      Subject to Rule 9010, and except as otherwise provided in Section 5.03 of the Plan, all distributions under the Plan shall be made by AYC to the holder of each Allowed Claim or Allowed Equity Interest at the address of such holder as listed on the Schedules and/or Proof of Claim as of the Effective Date unless the Debtors or Reorganized Debtors have been notified in writing of a change of address, including by the filing of a proof of Claim by such holder that provides an address different from the address reflected on the Schedules.

(b)      Any payment of Cash made by AYC pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer.

(c)      Any payment or Distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(d)      No payment of Cash less than One Hundred 00/100 Dollars ($100) shall be made by AYC to any holder of a Claim unless a request therefore is made in writing to AYC, or unless the Distribution is a final Distribution.

(f)     When any Distribution on account of an Allowed Claim pursuant to the Plan would otherwise result in a Distribution that is not a whole number, the actual distribution shall be rounded as follows:  fractions of ½ or greater shall be rounded to the next higher whole number and fractions of less than ½ shall be rounded to the next lower whole number.  Cash to be distributed pursuant to the Plan shall be adjusted as necessary to account for the rounding provided in Section 5.03(f) of the Plan.

(g)     Any Distributions of Cash or other property under the Plan that is unclaimed for a period of six (6) months after the Distribution Date shall constitute Unclaimed Funds and any entitlement of any holder of any Claim to such distributions shall be extinguished and forever barred.

(h)     Unless otherwise provided herein, all initial Distributions and deliveries to be made on the Effective Date shall be made on the initial Distribution Date.  Subsequent Distributions shall be made in accordance with the terms set forth in the Plan.

(i)     At the close of business on the Effective Date, the claims register shall be closed, and there shall be no further changes in the record holders of any Claims.  The Debtors shall have no obligation to recognize any transfer of any Claims occurring after the Effective Date; *provided, however,* that the foregoing will not be deemed to prohibit the sale or transfer of any Claim after the Effective Date.  The Debtors shall instead be entitled to recognize and deal for all purposes under the Plan with only those record holders as of the close of business on the Effective Date.

### 5.03     Distributions Withheld for Disputed General Unsecured Claims

(a)     **Establishment and Maintenance of Reserve**

On the initial Distribution Date and each subsequent Distribution Date, AYC shall reserve from the Distributions to be made on such dates to the holders of Allowed Claims, an amount equal to One Hundred Percent (100%) of the Distributions to which holders of Disputed Claims would be entitled under the Plan as of such dates if such Disputed Claims were Allowed Claims in their Disputed Claim Amounts or as estimated by the Debtor or the Court in accordance with Section 5.09 of the Plan (the "**Disputed Claims Reserve**").

(b)     **Property Held in Disputed Claims Reserve**

Cash in the Disputed Claims Reserve shall (together with all dividends or other accretions or distributions thereon) be held in trust by AYC for the benefit of the potential recipients of such Cash and shall not constitute property of AYC.

(c)     **Distributions Upon Allowance of Disputed General Unsecured Claims**

The holder of a Disputed Claim that becomes an Allowed Claim subsequent to any Distribution Date shall receive distributions of Cash and any other consideration from the Disputed Claims Reserve from AYC within ninety (90) days following the date on which such

Disputed Claim becomes an Allowed Claim pursuant to a Final Order.  Such Distributions shall be made in accordance with the Plan.

(d)     **No Surplus Distributions to Holders of Allowed General Unsecured Claims**

To the extent that a Disputed Claim is not Allowed or becomes an Allowed Claim in an amount less than the Disputed Claim Amount, the excess of Cash and any other consideration in the Disputed Claims Reserve over the amount of Cash and any other consideration actually distributed on account of such Disputed Claim shall vest in AYC.

(e)     **Expenses of Disputed Claims Reserve**

Except as otherwise ordered by the Court, the amount of any reasonable expenses incurred by AYC on or after the Effective Date with respect to the Disputed Claims Reserve shall be paid by AYC.

**5.04    Procedures for Allowance or Disallowance of Disputed Claims**

(a)     **Objections to and Resolution of Administrative Claims and General Unsecured Claims**

Except as to applications for allowance of compensation and reimbursement of expenses under sections 330 and 503 of the Code, the Debtors or the Reorganized Debtors shall have the exclusive right to make and file objections to Administrative Claims and General Unsecured Claims subsequent to the Effective Date.  All objections shall be litigated to Final Order; *provided, however*, that following the Effective Date, the Reorganized Debtors shall have the authority to compromise, settle, otherwise resolve or withdraw any of their objections without approval of the Court.  Unless otherwise ordered by the Court, the Debtors or the Reorganized Debtors shall file all objections to Claims and serve such objections upon the holder of the Claim as to which the objection is made as soon as is practicable, but in no event later than thirty (30) days after the Effective Date or such later date as may be approved by the Court.  The Debtors or the Reorganized Debtors reserve the right to object to Administrative Claims as such claims arise in the ordinary course of business.  The Reorganized Debtors shall bear all costs and expenses relating to the investigation and prosecution of Disputed Claims from and after the Effective Date.

(b)     **No Distribution Pending Allowance**

Notwithstanding any other provision of the Plan, if any portion of a Claim is disputed, the full amount of such Claim shall be treated as a Disputed Claim for purposes of this Plan, and no payment or Distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim or Allowed Equity Interest (in whole or in part).

(c)     **Disallowed Claims**

All Claims held by Persons against whom the Debtors or Reorganized Debtors have commenced an Action under sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Code,

shall be deemed "disallowed" Claims pursuant to section 502(d) of the Code and holders of such Claims shall not be entitled to vote to accept or reject the Plan.   Claims that are deemed disallowed shall continue to be disallowed for all purposes until the Avoidance Action against such party has been settled or resolved by Final Order and any sums due to the Estates from such party have been paid.

**5.05**     **Disbursing Agent**

The Reorganized Debtors, or such Person(s) as the Reorganized Debtors may designate with approval of the Court, will act as Disbursing Agent under the Plan with respect to all Distributions to holders of Claims and Equity Interests, and will make all Distributions required to be distributed under the applicable provisions of the Plan.   Any Disbursing Agent may employ or contract with other entities to assist in or make the Distributions required by the Plan.   Each Disbursing Agent will serve without bond, and each Disbursing Agent, other than the Reorganized Debtors, will receive, without further Court approval, reasonable compensation for distribution services rendered pursuant to the Plan and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services from the Reorganized Debtors on terms acceptable to the Reorganized Debtors.   The Reorganized Debtors shall hold all reserves and accounts pursuant to the Plan, the Disputed Claims Reserve.

**5.06**     **Setoffs and Recoupment**

The Debtors may, but shall not be required to, set off (pursuant to the provisions of sections 553 and 362 of the Code or other applicable law) against or recoup from any Claim or Equity Interest and the payments to be made pursuant to the Plan in respect of such Claim or Equity Interest, any Claims of any nature whatsoever that the Debtors may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any setoff or recoupment right they may have against the holder of such Claim or Equity Interest.

**5.07**     **Estimations of Claims**

For purposes of calculating and making Distributions under the Plan, any Claimholder with a Disputed Claim is not entitled to vote on the Plan unless said Claimholder has its Claim estimated by the Court.   The Debtors and the Reorganized Debtors may at any time request that the Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Code or otherwise regardless of whether the Debtors or Reorganized Debtors previously objected to such Claim or whether the Court has ruled on any such objection, and the Court will retain jurisdiction to estimate any Claim at any time during litigation concerning such objection to any claim, including without limitation, during the pendency of any appeal relating to any such objection.   In the event that the Court estimates any contingent or unliquidated claim, the amount so estimated shall constitute either the Allowed Amount of such Claim or a maximum limitation on the amount of such Claim, as determined by the Court.   If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors or the Reorganized Debtors may pursue supplementary proceedings to object to the allowance of such Claim.   All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative

and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Court.

### 5.08    No Recourse

Notwithstanding that the Allowed Amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Code and Rules or is Allowed in an amount for which after application of the payment priorities established by the Plan there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claimholder shall have recourse against the Disbursing Agent, the Debtors, the Reorganized Debtors, or any of their respective professionals, consultants, officers, directors or Affiliates or their respective successors or assigns, or any of their respective property. However, nothing in the Plan shall modify any right of a holder of a Claim under section 502(j) of the Code. THE ESTIMATION OF CLAIMS AND ESTABLISHMENT OF RESERVES UNDER THE PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.

### 5.09    Amendments to Claims

A Claim may be amended prior to the Confirmation Date only as agreed upon by the Debtors and the holder of such Claim, or as otherwise permitted by the Court, the Rules or applicable law. After the Confirmation Date, a Claim may not be amended without the authorization of the Court. Any amendment to a Claim filed after the Confirmation Date shall be deemed disallowed in full and expunged without any Action by the Debtors, the Reorganized Debtors or the Estates, unless the Claim holder has obtained prior Court authorization for the filing of such amendment.

### 5.10    Post-Petition Interest on Claims

Unless expressly provided in the Plan, the Confirmation Order, or any contract, instrument, release, settlement, or other agreement entered into in connection with the Plan or required by applicable law, Post-Petition Interest shall not accrue on or after the AYC's Petition Date on account of any Claim in or against AYC and Post-Petition Interest shall not accrue on or after AYE's Petition Date on account of any Claim in or against AYE.

## ARTICLE VI
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 6.01.    Assumption or Rejection of Executory Contracts and Unexpired Leases

**(a)        Executory Contracts and Unexpired Leases**

The Code grants the Debtors the power, subject to the approval of the Court, to assume or reject Executory Contracts and unexpired leases. If an Executory Contract or unexpired lease is rejected, the other party to the agreement may file a claim for damages incurred by reason of the

rejection.  In the case of rejection of leases of real property, such damage claims are subject to certain limitations imposed by the Code.

Pursuant to sections 365(a) and 1123(b)(2) of the Code, all Executory Contracts and unexpired leases between the Debtors and any Person shall be deemed <u>rejected</u> by the Reorganized Debtors as of the Effective Date, <u>except</u> for any Executory Contract or unexpired lease (i) which previously has been assumed or rejected pursuant to an order of the Court entered prior to the Effective Date, (ii) as to which a motion for approval of the assumption or rejection of such Executory Contract or unexpired lease has been filed and served prior to the Effective Date or (iii) which is listed on an Assumption List which shall be filed with the Court and served on the affected parties by no later than twenty (20) days prior to the deadline to submit Ballots; *provided, however*, that the Debtors or Reorganized Debtors shall have the right, on or prior to the Confirmation Date, to amend the Assumption List to delete any Executory Contract or unexpired lease therefrom or add any Executory Contract or unexpired lease thereto, in which event such Executory Contract(s) or unexpired lease(s) shall be deemed, respectively, assumed or rejected.  The Debtors or Reorganized Debtors shall provide notice of any amendments to the Assumption List to the non-debtor parties to the Executory Contracts and unexpired leases affected thereby.  The listing of a document on the Assumption List shall not constitute an admission by the Debtors or Reorganized Debtors that such document is an Executory Contract or an unexpired lease or that the Debtors or Reorganized Debtors have any liability thereunder.

Each Executory Contract and unexpired lease listed or to be listed on the Assumption List that relates to the use or occupancy of real property shall be deemed to include (i) all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such Executory Contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed on the Assumption List, if any, and (ii) all Executory Contracts or unexpired leases appurtenant to the premises listed on the Assumption List, including, without limitation, all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vault, tunnel or bridge agreements or franchises, and any other interests in real estate or rights <u>in rem</u> relating to such premises, unless any of the foregoing agreements previously have been assumed.

Currently, AYC is the lessee to a commercial real estate lease agreement for its office premises with its landlord, Tom Tom Realty Holdings, LLC, an entity owned 50% by Thomas Smith Sr. and 50% by Thomas Smith Jr.  The lease is a month-to-month lease and AYC's monthly rental payment is approximately $5,000.  AYC anticipates entering into a four (4) year lease agreement with Tom Tom Realty Holdings, LLC commencing on January 1, 2014 with monthly rental payments of $5,500.  Prior to entering into said lease agreement, AYC will seek this Court's approval of same.

(c)    **Insurance Policies**

Each of the Debtors' insurance policies and any agreements, documents or instruments relating thereto, including without limitation, any retrospective premium rating plans relating to such policies, shall be treated as Executory Contracts under the Plan.  Notwithstanding the foregoing, distributions under the Plan to any holder of a Claim covered by any insurance

policies and related agreements, documents or instruments that are assumed hereunder, shall comply with the treatment provided under the Plan.  Nothing contained in the Plan shall constitute or be deemed a waiver or release of any Action that the Debtors may hold against any entity, including, without limitation, the insurers under any of the Debtors' policies of insurance.

      **(d)**      **Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases**

Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute (i) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Code, of the assumption of the Executory Contracts and unexpired leases assumed pursuant to Article VI of the Plan and (ii) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Code, of the rejection of the Executory Contracts and unexpired leases rejected pursuant to the Plan.

      **6.02.**   **Cure of Defaults**

To the extent that cure payments are due with respect to an Executory Contract or unexpired lease to be assumed pursuant to the Plan, the amount of such cure payment shall be listed in the Plan Supplement.  To the extent that the non-debtor party to any Executory Contract or unexpired lease disagrees with the cure amount listed in the Plan Supplement, such party must file a notice of dispute with the Court and serve such notice on the Debtors by no later than five (5) days prior to the Confirmation Hearing.  Except as may otherwise be agreed to by the parties or provided herein, within ninety (90) days after the Effective Date, the Reorganized Debtors shall cure any and all undisputed defaults under any Executory Contract or unexpired lease assumed pursuant to the Plan in accordance with section 365(b)(1) of the Code.  Except as otherwise provided herein, all disputed defaults that are required to be cured shall be cured either within ninety (90) days of the entry of a Final Order determining the amount, if any, of the Debtors' or Reorganized Debtors' liability with respect thereto, or as may otherwise be agreed to by the parties.  If there are any objections filed, the Court shall hold a hearing.  In the event the Court determines that the cure amount is greater than the cure amount listed by the Debtors, the Reorganized Debtors may elect to reject the contract or unexpired lease and not pay such greater cure amount.

      **6.03.**   **Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan**

Claims arising out of the rejection of an Executory Contract or unexpired lease pursuant to the Plan must be filed with the Court and/or served upon the Debtors or Reorganized Debtors or as otherwise may be provided in the Confirmation Order, by no later than thirty (30) days after the later of (i) notice of entry of an order approving the rejection of such Executory Contract or unexpired lease, (ii) notice of entry of the Confirmation Order and (iii) notice of an amendment to the Assumption List.  Any Claim not filed within such time will be forever barred from assertion against the Debtors, their Estates, the Reorganized Debtors and their property.  Unless otherwise ordered by the Court, all Claims arising from the rejection of Executory Contracts and unexpired leases shall be treated as Unsecured Claims under the Plan.

      **6.04.**   **Indemnification Obligations**

For purposes of the Plan, the obligations of the Debtors to defend, indemnify, reimburse, or limit the liability against any claims or obligations of their present and former directors, officers or employees who served as directors, officers and employees, respectively, on or after AYC's and AYE's respective  Petition Dates, pursuant to the Debtors' respective Articles of incorporation or bylaws, applicable state law or specific agreement, or any combination of the foregoing, shall survive confirmation of the Plan, remain unaffected thereby, and not be released, irrespective of whether indemnification, defense, reimbursement or limitation is owed in connection with an event occurring before, on or after the Effective Date.

### 6.05.   Compensation and Benefit Programs

Except as provided in the Plan, and other than stock option or similar plans which will be cancelled as part of the treatment of any Class of Claims under the Plan, all employment and severance practices and policies, and all compensation and benefit plans, policies, and programs of the Debtors applicable to their directors, officers, and employees who served as directors, officers and employees, respectively, on or after AYC's and AYE's respective Petition Dates, including, without limitation, all savings plans, retirement plans (exclusive of defined benefit plans), health care plans, severance benefit plans, incentive plans, workers' compensation programs and life, disability and other insurance plans, are treated as Executory Contracts under the Plan and are hereby assumed pursuant to sections 365(a) and 1123(b)(2) of the Code; *provided, however*, that the Reorganized Debtors reserve the right to modify any and all such compensation and benefit practices, plans, policies, and programs in accordance with the terms thereof.

### ARTICLE VII
### MEANS FOR IMPLEMENTATION
### AND EFFECT OF CONFIRMATION OF PLAN

### 7.01   General

Upon confirmation of the Plan, and in accordance with the Confirmation Order, the Debtors or Reorganized Debtors, as the case may be, will be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan.  In addition to the provisions set forth elsewhere in the Plan, the following shall constitute the means for implementation of the Plan.

### 7.02   The Reorganized Debtors

Except as otherwise provided in the Plan, on the Effective Date of the Plan, all Assets of the Debtors shall be vested in AYC as Reorganized Debtor.  The Reorganized Debtor AYC shall assume all of the Debtors' rights, obligations and liabilities under the Plan.

### 7.03   Funding

Funds to be used to make Cash payments under the Plan shall derive from the operation of the Debtors' business in the ordinary course prior to and after the Effective Date.  Throughout the AYC's bankruptcy case, AYC has been operating on a cash flow positive basis, which is

evidenced in AYC's monthly operating reports.[4]  As demonstrated in the projected operating income and expense budget (the "**Budget**"), which is attached to the Disclosure Statement as **Exhibit "I"**, demonstrates that AYC is cash flow positive and has the funds available to perform its obligations under the Plan.  While the Budget anticipates approximately $515,364 per year in profit, Class 2 of the Plan requires AYC to make an annual payment to PNC Bank in the amount equal to eighty percent (80%) of its net annual income (as calculated on December 31st) as a principal paydown.  In the event PNC Bank's Allowed Secured Claim is paid in full prior to the completion of the payments to be made to the Internal Revenue Service, AYC shall make an annual payment in the amount equal to eighty percent (80%) of its net annual income (as calculated on December 31st) to the Internal Revenue Service until its Allowed Claim is paid in full.

In order to assist in funding the Debtors' business operations under the Plan, the Debtors may retain any Cash on hand, any funds in their bank accounts, and may retain amounts received from accounts receivable to pay accounts payable.  Additionally, Thomas Smith Jr. has agreed to fund the sum of $25,000 to assist AYC in funding the payments that need to be made at Confirmation.  Under the Plan, PNC Bank will receive a pledge of one hundred percent of the newly issued stock in AYC until PNC is repaid in full pursuant to these terms.  Accordingly, the Debtors assert that it is able to perform all of its obligations under the Plan, and as such, the Plan satisfies 11 U.S.C. § 1129(a)(11).

### 7.04    Effectiveness of Securities, Instruments and Agreements

On the Effective Date, all documents described in the Plan Supplement and all other agreements entered into or documents issued pursuant to the Plan and/or any agreement entered into or instrument or document issued in connection with any of the foregoing, as applicable, shall become effective and binding upon the parties thereto in accordance with their respective terms and conditions and shall be deemed to become effective simultaneously.

### 7.05    Corporate Action

On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the directors of the Debtors or the Reorganized Debtors, including, without limitation, the authorization to issue or cause to be issued new common stock and documents relating thereto, the adoption of the Reorganized Debtors' Articles of Incorporation, the Reorganized Debtors' Bylaws, and the election or appointment, as the case may, of directors and officers of the Debtors pursuant to the Plan, shall be deemed to have occurred and shall be in full force and effect from and after the Effective Date pursuant to the laws of the State of Florida, and other applicable general corporation law of the jurisdiction in which the Reorganized Debtors are incorporated, without any requirement or further action by the Board of Directors of the Debtors or the Reorganized Debtors.  On the Effective Date, or as soon thereafter as is practicable, the Reorganized Debtors shall, if required, file any amended required documents with the secretary of the state of the state in which the Reorganized Debtors are organized.

---

[4]     The monthly operating report schedule of receipts and disbursements from AYC's Petition Date through September 30, 2013 are attached as **Exhibit "J"** to the Disclosure Statement.

**7.06     Approval of Agreements**

Entry of the Confirmation Order shall constitute approval of the Plan Documents and all such transactions, subject to the occurrence of the Effective Date.

**7.07     Effective of Instruments and Agreements**

On the Effective Date, all agreements entered into or documents issued pursuant to the Plan, shall become effective and binding upon the parties thereto in accordance with their respective terms and conditions and shall be deemed to be effective simultaneously.

**7.08     No Change of Control**

Any acceleration, vesting or similar change of control rights of any Person under employment, benefit or other arrangements with the Debtors that could otherwise be triggered by the entry of the Confirmation Order or the consummation of the Plan or any of the transactions contemplated thereby shall be deemed to be waived and of no force or effect.

**7.09     Continued Corporate Existence and Compensation of Insiders**

The Reorganized Debtors shall continue to exist after the Effective Date with all powers of a corporation under the laws of the State of Florida and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under Florida law; and, following the Effective Date, the Reorganized Debtors may operate its business free of any restrictions imposed by the Bankruptcy Code, the Bankruptcy Rules or by the Court, subject only to the terms and conditions of the Plan and Confirmation Order.  After the Effective Date, the Reorganized Debtors may operate their business, and may use, acquire, and dispose of its property, free of any restrictions of the Code and Rules.

As of the Petition Date, the Debtors were owned 50% by Thomas Smith Jr. and 50% by Thomas Smith Sr.  Upon the Effective Date, the Reorganized Debtors shall be owed 100% by Thomas Smith Jr.   Thomas Smith Jr. will be the president of the Reorganized Debtors.

The payments received by Thomas Smith Jr. and Thomas Smith Sr. within the year prior to the Petition Date are listed in **Exhibit "H"** to the Disclosure Statement.  In the year prior to AYC's Petition Date, Thomas Smith Jr. received the net amount of $244,413.80 from AYC since he received $1,138,000.04 from AYC and made payments to AYC in the amount of $893,586.20 during the same period.  Thomas Smith Sr.'s salary in the year prior to AYC's Petition Date was $195,228.68.

In the year prior to AYC's Petition Date, in an attempt to avoid the filing of a bankruptcy, Thomas Smith Jr.'s salary was reduced considerably from prior years and he contributed monies to AYC.  Specifically, in 2008, Thomas Smith Jr.'s salary in 2008 was $532,500; $482,190 in 2009; $397,511 in 2010; and $385,000 in 2011.  Further, prior to AYC's Petition Date, in order to reduce AYC's expenses and maximize its' profitably, Thomas Smith Jr. significantly increased the amount of hours he works each week from 40-45 hours to 65-75 hours and

consolidated his position with several other positions, which had the practical effect of reducing the payroll by approximately $620,000 per year.

| Position | Annual Salary |
|---|---|
| Installation Manager | $60,000 |
| Service Manager | $60,000 |
| Accounts Payable | $45,000 |
| Accounts Receivable | $45,000 |
| Controller | $100,000 |
| Purchasing Manager | $60,000 |
| Permit Plan Drafting and Local Calculations | $30,000 |
| Fleet Automobile Manager | $40,000 |
| Hour and Payroll | $60,000 |
| Marketing and Advertising | $45,000 |
| Warehouse Manager | $40,000 |
| Customer Service Manager | $35,000 |
| **TOTAL SAVINGS:** | **$620,000** |

During the duration of AYC's bankruptcy proceeding, Thomas Smith Jr. has been receiving a salary of $10,000 per month from AYC and Thomas Smith Sr. has been receiving a salary of $5,000 from AYC. Neither Thomas Smith Sr. nor Thomas Smith Jr. have received any salaries or benefits from AYE.

Since AYC's Petition Date, Thomas Smith Jr. has worked and continues to work approximately 65 to 75 hour work weeks 6 to 7 days a week. On a daily basis, Thomas Smith Jr. is responsible for the following: overseeing daily installations (approximately 8-15 installations a day in four counties); overseeing daily service calls (approximately 25-75 a day in four counties); personally meeting with customers on job sites; overseeing 20 to 25 customer service staff, warehouse staff, sales department staff; overseeing all purchases; and overseeing all facilities of AYC.

As part of his continual effort to ensure the highest customer service, Thomas Smith Jr. gives his cell phone number and email to all of AYC's customers and encourages AYC's customers to contact him anytime for any reason. Since AYC's Petition Date, Thomas Smith Jr. has added his direct contact information on all of AYC's advertisement materials, service tickets, contracts, and AYC's website. AYC believes that Thomas Smith Jr.'s constant availability to his customers has created increased customer satisfaction and AYC's profitability.

Post-confirmation, as reflected on the Budget attached as **Exhibit "I"** to the Disclosure Statement, Thomas Smith Jr. will receive a salary in the amount of $30,000 per month with three to six percent (3-6%) annual increases over the life of the Plan. Thomas Smith Sr. will receive an annual salary in the amount of $100,000 with three to six percent (3-6%) annual increases

over the life of the Plan.  Once all required payments under the Plan have been made, AYC may increase or decrease the aforementioned salaries to Thomas Smith Jr. and Thomas Smith Sr., if AYC determines such a change in salary is warranted under the circumstances.

### 7.10    Term of Bankruptcy Injunction or Stays

All injunctions or stays provided for in these Cases under sections 105 or 362 of the Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

### 7.11    Revesting of Assets

Except as otherwise provided in the Plan, pursuant to section 1141 of the Code, the property of the Estates of the Debtors, including, without limitation, the Actions shall revest in the Reorganized Debtors on the Effective Date, free and clear of all Liens, Claims and Equity Interests of holders of Claims and Equity Interests, except as otherwise provided in the Plan or the Confirmation Order.

### 7.12    Causes of Action

As of the Effective Date, pursuant to section 1123(b)(3)(B) of the Code, any and all Actions accruing to the Debtors and Debtors in Possession, including, without limitation, actions under sections 510, 542, 544, 545, 547, 548, 549, 550, 551 and 553 of the Code, shall become Assets of the Reorganized Debtors, and the Reorganized Debtors shall have the authority to commence and prosecute such Actions for the benefit of the Estates.   Specifically, the Reorganized Debtors shall continue to prosecute any Action pending on the Effective Date. Further, section 547 of the Code enables a debtor in possession to avoid transfers to a creditor, based upon an antecedent debt, made within ninety (90) days of AYC's and AYE's respective Petition Dates, which enables the creditor to receive more than it would under a liquidation.  Creditors have defenses to the avoidance of such preferential transfers based upon, among other things, the transfers having occurred as part of the debtor's ordinary course of business, or that subsequent to the transfer the creditor provided the debtor with new value. The Reorganized Debtors will analyze payments made by the Debtors to ordinary creditors within ninety (90) days (or in the case of insiders, one year) before AYC's and AYE's respective Petition Dates and payments made by the Debtors to Insiders within one (1) year prior to AYC's and AYE's respective Petition Dates (as set forth in item 3 in the Debtors' respective Statement of Financial Affairs) to determine which such payments may be avoidable as preferential transfers under the Code and, if appropriate, prosecute such Actions.  **Exhibit "G"** to the Disclosure Statement contains a list of transfers made to ordinary creditors within ninety (90) days prior to AYC's and AYE's respective Petition Dates.  **Exhibit "H"** to the Disclosure Statement contains a list of transfers made to Insiders within one (1) year prior to the Petition Date.  AYC will retain a Plan Administrator to evaluate whether AYC or AYE has any Chapter 5 avoidance actions against third parties and to prosecute same to the extent applicable.  After the Effective Date, the Plan Administrator shall have the authority to compromise and settle, otherwise resolve, discontinue, abandon or dismiss all such Actions with the approval of the Court. Prior to Confirmation, the Debtors shall file a schedule of potential Avoidance Actions, if any.

**7.13    Release of Debtor**

The rights afforded herein and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction and release of Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after AYC's and AYE's respective Petition Dates, against the Debtors and the Debtors in Possession, the Estates, or any of the Assets or properties under the Plan.  Except as otherwise provided herein, (i) on the Effective Date, all such Claims against and Equity Interest in the Debtors shall be satisfied and released in full, and (ii) all Persons shall be precluded and enjoined from asserting against the Reorganized Debtors, their successors, or their Assets or properties any other or further Claims or Equity Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not such holder has filed a Proof of Claim or proof of equity interest and whether or not such holder has voted to accept or reject the Plan.  Notwithstanding the foregoing, nothing in the Plan shall release, enjoin or preclude any Claim that has not arisen as of the Effective Date that any governmental unit may have against the Debtors and nothing in the Plan shall release, nullify or enjoin the enforcement of any liability to a governmental unit under environmental statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of the Confirmation Order.

**7.14    Injunction Related to Release**

*Except as otherwise expressly provided in the Plan, the Confirmation Order or a separate order of the Court, all Persons who have held, hold or may hold Claims against or Equity Interests in the Debtors, are permanently enjoined, on and after the Effective Date, from (i) commencing or continuing in any manner any Action or other proceeding of any kind with respect to any such Claim or Equity Interest against the Debtors, (ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against the Debtors on account of any such Claim or Equity Interest, (iii) creating, perfecting or enforcing any Lien or asserting control of any kind against the Debtors or against the property or interests in property of the Debtors on account of any such Claim or Equity Interest and (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors or against the property or interests in property of the Debtors on account of any such Claim or Equity Interest.  Such injunctions shall extend to successors of the Debtors (including, without limitation, the Reorganized Debtors) and their respective properties and interests in property.*

**7.15    Release by Holders of Impaired Claims.**

*This Plan, and the provisions and distributions set forth herein, is a full and final settlement and compromise of all Claims and causes of Action, whether known or unknown, that holders of Claims against and Equity Interests in the Debtors may have against the Debtors.  In consideration of the obligations of the Debtors, the Reorganized Debtors, under this Plan, the securities, contracts, instruments, releases and other agreements or documents to be delivered in connection with this Plan, each holder of a Claim against or Equity Interest in the Debtors shall be deemed to forever release and waive all Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of Action and liabilities (other than the*

*rights to enforce the Debtors' or the Reorganized Debtors' obligations under this Plan and the securities, contracts, instruments, releases and other agreements and documents delivered thereunder) whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, these Chapter 11 Cases or the conduct thereof, or this Plan.  Notwithstanding the foregoing, nothing in this Article 7.15, the Plan, or the Confirmation Order shall release any Claim or causes of Action for gross negligence or willful misconduct.*

### 7.16    Injunction Against Interference with the Plan

*Upon the entry of a Confirmation Order with respect to the Plan, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any Actions to interfere with the implementation or consummation of the Plan, except with respect to Actions any such entity may take in connection with the pursuit of appellate rights.*

## ARTICLE VIII
## CONFIRMATION AND EFFECTIVENESS OF THE PLAN
## AND FUNDING AND FEASIBILITY OF THE PLAN

### 8.01    Conditions Precedent to Confirmation

The Plan shall not be confirmed by the Court unless and until the following conditions shall have been satisfied or waived pursuant to Section 8.02 of the Plan:

(i)      The Confirmation Order shall be in form and substance reasonably acceptable to the Debtors and include, among other things, a finding of fact that the Debtors, the Reorganized Debtors, and their respective present and former members, officers, directors, employees, advisors, attorneys, and agents acted in good faith within the meaning of and with respect to all of the Actions described in section 1125(e) of the Code and are, therefore, not liable for the violation of any applicable law, rule or regulation governing such Actions; and

(ii)      All exhibits to the Plan, including those to be contained in the Plan Supplement, shall be in form and substance reasonably acceptable to the Debtors and approved by the Court.

### 8.02    Conditions Precedent to Effectiveness

The Plan shall not become effective unless and until the following conditions have been satisfied or waived pursuant to Section 8.02 of the Plan:

(i)      The Confirmation Order shall have been entered and shall be a Final Order (with no modification or amendment thereof), and there shall be no stay or injunction that would prevent the occurrence of the Effective Date;

(ii)      The statutory fees owing to the United States Trustee shall have been paid in full;

(iii)    All other Actions, authorizations, filings consents and regulatory approvals required (if any) shall have been obtained, effected or executed in a manner acceptable to the Debtors and remain in full force and effect or, if waivable, waived by the Person or Persons entitled to the benefit thereof.

### 8.03    Effect of Failure of Conditions

If each condition to the Effective Date specified in the Plan has not been satisfied or duly waived within ninety (90) days after the Confirmation Date, then upon the filing of a motion by the Debtors made before the time that all conditions have been satisfied or duly waived, the Confirmation Order will be vacated by the Court; *provided, however*, that notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived before the Court enters an order granting the relief requested in such motion. If the Confirmation Order is vacated, the Plan shall be deemed null and void in all respects, including without limitation the release of Claims pursuant to section 1141 of the Code and the assumptions or rejections of Executory Contracts and unexpired leases as provided by the Plan, and nothing contained herein shall (1) constitute a waiver or release of any Action by, or Claims against, the Debtors or (2) prejudice in any manner the rights of the Debtors.

### 8.04    Waiver of Conditions

The Debtors may waive one or more of the conditions precedent to confirmation of the Plan, or the condition precedent to effectiveness of the Plan set forth in Section 8.02 of the Plan. The Debtors may waive in writing one or more of the other conditions precedent to confirmation and effectiveness of the Plan, without further notice to parties in interest or the Court without a prior hearing.

### 8.05    Best Interests Test and Liquidation Analysis

Notwithstanding acceptance of the Plan by each Impaired Class, in order to confirm the Plan, the Bankruptcy Court must determine that the Plan is in the best interests of each holder of a Claim or Interest in any such Impaired Class who has not voted to accept the Plan. Accordingly, if an Impaired Class does not unanimously accept the Plan, the best interests test requires the Bankruptcy Court to find that the Plan provides to each member of such Impaired Class a recovery on account of the Class member's Claim or Interest that has a value, as of the Effective Date, at least equal to the value of the distribution that each such Class member would receive if Debtors were liquidated under Chapter 7 of the Bankruptcy Code on such date.

To estimate what members of each Impaired Class of unsecured creditors and equity security holders would receive if Debtors were liquidated under Chapter 7, the Bankruptcy Court must first determine the aggregate dollar amount that would be generated from Debtors' Assets if these Chapter 11 Cases were converted to a Chapter 7 case under the Bankruptcy Code and the Assets were liquidated by a Trustee in bankruptcy (the "**Liquidation Value**" of such Assets). The Liquidation Value would consist of the net proceeds from the disposition of Debtors' Assets and would be augmented by any Cash held by Debtors.

As detailed in the Liquidation Analysis attached to the Disclosure Statement as **Exhibit "B"**, the Debtors' Liquidation Value would not allow holders of Allowed General Unsecured Claims to receive any distribution, and the Debtors' Plan proposes to make a distribution to the holders of Allowed General Unsecured Claims.

The Debtors have compared the Claims in the Plan with the Liquidation Analysis that will be attached to the Disclosure Statement, and believes that Distributions under the Plan will provide at least the same recovery to holders of Allowed Claims against the Debtors on account of such Allowed Claims as would distributions by a Chapter 7 Trustee.

## ARTICLE IX
## RETENTION OF JURISDICTION

The Court shall have exclusive jurisdiction of all matters arising out of, and related to, these Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Code and for, among other things, the following purposes:

(a)     to hear and determine pending applications for the assumption or rejection of Executory Contracts or unexpired leases, if any are pending, and the allowance of Claims resulting, therefrom;

(b)     to determine any and all adversary proceedings, motions, applications and contested matters, and other litigated matters pending on the Confirmation Date;

(c)     to hear and determine all Actions, including, without limitation, Actions commenced by the Debtors or any other party in interest with standing to do so, pursuant to sections 505, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Code, collection matters related thereto, and settlements thereof;

(d)     to hear and determine any objections to or the allowance, classification, priority, compromise, estimation or payments of any Administrative Claims, Claims or Equity Interests;

(e)     to ensure that Distributions to holders of Allowed Claims are accomplished as provided in the Plan;

(f)     to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(g)     to issue such orders in aid of execution and consummation of the Plan, to the extent authorized by section 1142 of the Code;

(h)     to consider any amendments to or modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in the Plan, the Plan Supplement, or any order of the Court, including, without limitation, the Confirmation Order;

(i)     to hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 330, 331, and 503(b) of the Code;

(j)      to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

(k)      to recover all Assets of the Debtors and Property of the Estates, wherever located;

(l)      to determine any Claim of or any liability to a governmental unit that may be asserted as a result of the transactions contemplated herein;

(m)      to enforce the Plan, the Confirmation Order and any other order, judgment, injunction or ruling entered or made in these Cases, including, without limitation, injunction, exculpation and releases provided for in the Plan;

(n)      to take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation;

(o)      to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Code (including, but not limited to, an expedited determination under section 505(b) of the Code of the tax liability of the Debtors for all taxable periods through the Effective Date for all taxable periods of the Debtors through the liquidation and dissolution of such entity);

(p)      to hear any other matter not inconsistent with the Code; and

(q)      to enter a Final Decree closing these Cases; *provided however*, that nothing in the Plan shall divest or deprive any other court or agency of any jurisdiction it may have over the Reorganized Debtors under applicable environmental laws.

## ARTICLE X
## MISCELLANEOUS PROVISIONS

### 10.01   Effectuating Documents and Further Transactions.

The Debtors or Reorganized Debtors, as the case may be, is authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to implement, effectuate and further evidence the terms and conditions of the Plan and any notes or securities issued pursuant to the Plan.

### 10.02   Exemption from Transfer Taxes.

Pursuant to section 1146(c) of the Code, the issuance, transfer or exchange of notes or equity securities under the Plan, including new common stock, creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated by the

Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

### 10.03  Authorization to Request Prompt Tax Determinations.

The Reorganized Debtors are authorized to request an expedited determination under section 505(b) of the Code of the tax liability of the Debtors, for all taxable periods through the Effective Date.

### 10.04  Exculpation.

Subject to the occurrence of the Effective Date, neither the Debtors nor the Reorganized Debtors, or any of their respective members, officers, directors, agents, financial advisors, attorneys, employees, equity holders, partners, affiliates and representatives (the "**Exculpated Parties**") shall have or incur any liability to any holder of a Claim or Equity Interest for any act or omission in connection with, related to, or arising out of, these Cases, the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan; *provided, however,* that the foregoing shall not operate as a waiver or release for (i) any express contractual obligation owing by any such Person, (ii) willful misconduct or gross negligence, and (iii) with respect to Professionals, liability arising from claims of professional negligence which shall be governed by the standard of care otherwise applicable to professional negligence claims under applicable non-bankruptcy law, and, in all respects, the Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan; *provided further* that nothing in the Plan shall, or shall be deemed to, release the Exculpated Parties, or exculpate the Exculpated Parties with respect to, their respective obligations or covenants arising pursuant to the Plan; *provided further* that the foregoing shall not operate as a waiver or release of Claims by governmental entities arising under environmental laws.

### 10.05  Injunction Relating to Exculpation.

The Confirmation Order will contain an injunction, effective on the Effective Date, permanently enjoining the commencement or prosecution by the Debtors, the Reorganized Debtors and any other Person, whether derivatively or otherwise, of any Action or causes of Action exculpated or released pursuant to this Plan against the Exculpated Parties.

### 10.06  Post-Effective Date Fees and Expenses

From and after the Effective Date, the Reorganized Debtors shall, in the ordinary course of business and without the necessity for any approval by the Court, pay the reasonable fees and expenses of Professionals thereafter incurred by the Reorganized Debtors, including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

### 10.07    Payment of Statutory Fees

AYC shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6).  After confirmation, the Reorganized Debtors shall file with the Court and serve on the United States Trustee a quarterly financial report regarding all income and disbursements, including all plan payments, for each quarter (or portion thereof) these Cases remains open.

### 10.08    Amendment or Modification of Plan

Alterations, amendments or modifications of the Plan may be proposed in writing by the Debtors at any time prior to the Confirmation Date in conformity with section 1127(a) of the Code, provided that the Plan, as altered, amended or modified, satisfies the conditions of sections 1122, 1123 and 1129 of the Code, and the Debtors shall have complied with section 1125 of the Code.  The Plan may be altered, amended or modified by the Debtors at any time after the Confirmation Date in conformity with section 1127(b) of the Code, provided that the Plan, as altered, amended or modified, satisfies the requirements of sections 1122 and 1123 of the Code and the Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under section 1129 of the Code and the circumstances warrant such alterations, amendments or modifications.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

Prior to the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Court.

### 10.09    Severability

In the event that the Court determines, prior to the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the holder or holders of such Claims or Equity Interests as to which the provision is determined to be invalid, void or unenforceable.  The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.  The Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 10.10    Revocation or Withdrawal of the Plan

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtors revoke or withdraw the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Actions by or against the Debtors or any other

Person, an admission against interests of the Debtors, nor shall it prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors.

**10.11    Binding Effect Notices**

The Plan shall be binding upon and inure to the benefit of the Debtors, the holders of Claims and Equity Interests, and their respective successors and assigns, including, without limitation, the Reorganized Debtors.

**10.12    Notices**

All notices, requests and demands to or upon the Debtors or the Reorganized Debtors to be effective shall be in writing and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

**If to the Reorganized Debtors:**

All Year Cooling and Heating, Inc.
Attention:  Thomas Smith, President
1345 NE 4th Avenue
Fort Lauderdale, Florida 33304

All Year Electric, Inc.
Attention:  Thomas Smith, President
1345 NE 4th Avenue
Fort Lauderdale, Florida 33304

**With a copy to:**

Shraiberg, Ferrara & Landau, P.A.
Attention:  Bradley S. Shraiberg, Esq.
2385 NW Executive Center Dr., Suite #300
Boca Raton, Florida 33431

**10.13    Governing Law**

Except to the extent the Code, Rules or other federal law is applicable, or to the extent the Plan or any agreement entered into pursuant to the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflicts of law of such jurisdiction.

**10.14    Withholding and Reporting Requirements**

In connection with the consummation of the Plan, the Debtors or the Reorganized Debtors, as the case may be, shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

**10.15    Section 1125(e) of the Code**

As of the Confirmation Date, the Debtors shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Code. As of the Confirmation Date, the Debtors and their respective members, officers, directors, agents, financial advisors, attorneys, employees, equity holders, partners, Affiliates and representatives shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Code in the offer and issuance of the new securities hereunder, and therefore are not, and on account of such offer, issuance and solicitation shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections hereof or other offer and issuance of new securities under the Plan.

**10.16    Filing of Additional Documents**

On or before Substantial Consummation of the Plan, the Debtors shall file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**10.17    No Admissions**

Notwithstanding anything in the Plan to the contrary, nothing contained in the Plan shall be deemed as an admission by any Person with respect to any matter set forth in the Plan or herein.

**10.18    Waiver of Bankruptcy Rule 3020(e) and 7062**

The Debtors may request that the Confirmation Order include (a) a finding that Rules 3020(e) and 7062 shall not apply to the Confirmation Order; and (b) authorization for the Debtors to consummate the Plan immediately after entry of the Confirmation Order.

**10.19    Time**

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Court, the provisions of Rule 9006 shall apply.

**10.20    Substantial Consummation**

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Code.

### 10.21  Final Decree

Once there has been Substantial Consummation of the Plan, the Reorganized Debtors shall file a motion with the Court to obtain a final decree to close these Cases.

### 10.22  Inconsistency

In the event of any inconsistency between the Plan, any Exhibit to the Plan or any other instrument or document created or executed pursuant to the Plan, the Plan shall govern.  In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall govern.

### 10.23  No Interest or Attorneys' Fees

Except as otherwise provided under the Plan, or as ordered by the Court, no interest, penalty or other charge, including any late charge, arising from and after AYC's and AYE's respective Petition Dates, and no award or reimbursement of any attorneys' fees or other related cost or disbursement, shall be allowed on, or in connection with, any Claim, unless otherwise provided under the Plan or awarded by the Court.

### 10.24  Successors and Assigns

This Plan and all the provisions hereof shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

### 10.25  Headings

The headings of articles, paragraphs and sub-paragraphs in this Plan are inserted for convenience only and shall not affect the interpretation of any provision of this Plan.

### 10.26  No Penalty for Prepayment

Neither the Debtors nor the Reorganized Debtors shall be liable for payment of any sum or interest in the form of a penalty relating to the prepayment of any claim treated under this Plan.

### 10.27  Savings Clause

Any minor defect or inconsistency in the Plan may be corrected or amended by the Confirmation Order.

**10.28** <u>**Remedy of Defects**</u>

After the Effective Date, the Reorganized Debtors may, with approval of the Court, and so long as it does not materially and adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of the Plan and in form and substance satisfactory to the Reorganized Debtors.

*[Remainder of Page Intentionally Left Blank]*

## ARTICLE XI
## CONCLUSION

The aforesaid provisions shall constitute the Plan of Reorganization of the Debtor. This Plan, when approved and confirmed by the Court, shall be deemed binding on the Debtor, the Reorganized Debtor and all creditors and all parties in interest and their successors and assigns in accordance with section 1141 of the Code.

**DEBTOR-IN-POSSESSION**

**ALL YEAR COOLING & HEATING, INC.**

By:_____
              Thomas A. Smith II, President

**DEBTOR-IN-POSSESSION**

**ALL YEAR ELECTRIC, INC.**

By: _____
              Thomas A. Smith II, President

## ATTORNEY CERTIFICATION

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court

for the Southern District of Florida and I am in compliance with the additional qualifications to

practice in this Court set forth in Local Rule 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was sent to those

parties as listed on the Court's Case Management / Electronic Case Filing, this 12th day of

November, 2013.


Respectfully Submitted,

**SHRAIBERG, FERRARA & LANDAU, P.A.**
Attorneys for the Debtor
2385 NW Executive Center Drive, #300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047
Email: bshraiberg@sfl-pa.com

By:    /s/ Bradley S. Shraiberg
     Bradley S. Shraiberg
     Florida Bar. No. 121622
     Lenore M. Rosetto
     Florida Bar No 064448
     lrosetto@sfl-pa.com